THE PEOPLE *ex rel.* James S. McCullough, Auditor,

*v.*

THE MILWAUKEE AVENUE STATE BANK *et al.*

*Opinion filed October 23, 1907—Rehearing denied Dec. 11, 1907.*

BANKS—*Auditor must give notice to have impairment of capital stock made good.* Section 11 of the State Banking act (Laws of 1887, p. 92,) makes it optional with the State Auditor, where capital stock has become impaired, to proceed at law against the individual stockholders or in equity for a receiver as therein specified, provided he has given thirty days' notice to the president, or, in his absence, to the officers upon whom the president's duties have devolved, to make good the impairment of capital stock; but the giving of such notice is a condition precedent to the institution by the Auditor of either proceeding.

VICKERS, J., and HAND, C. J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

On September 12, 1906, the People of the State of Illinois, on the relation of James S. McCullough, Auditor of Public Accounts of the State of Illinois, filed a bill in the circuit court of Cook county against the Milwaukee Avenue State Bank and others for the appointment of a receiver, for the purpose of the dissolution of said bank and the winding up of its affairs, and for injunction.

The bill, which is verified, alleges, among other things, that the Milwaukee Avenue State Bank is a corporation organized under an act of the General Assembly of the State of Illinois entitled "An act concerning corporations with banking powers," passed and adopted in the year 1887; that said bank was organized with a capital stock of $250,000 about the year 1893 for the purpose of doing a general banking business, and that it has been engaged in said business in the city of Chicago for more than ten years last past;

that said bank, on August 6, 1906, was legally indebted to its various depositors in about the sum of $4,000,000, and that it was the owner and in possession of a large amount of property, both real and personal; that on the date last mentioned Paul O. Stensland was the president of said bank and had acted in that capacity for many years, and that while in the management and control of said bank he fraudulently and unlawfully appropriated, from time to time, large sums of money and other valuable property belonging to said bank to his own personal use; that said Stensland made or caused to be made false entries on the books of said bank and turned over to said bank many forged and worthless notes and obligations for large amounts, aggregating $500,000; that Henry W. Hering was cashier of said bank and knew of such illegal practices, and that while acting as cashier of said bank he willfully made to the Auditor of Public Accounts of the State of Illinois, and caused to be published, false and fraudulent statements as to the resources and liabilities of said bank; that the directors of said bank, if not actually cognizant of the misdoings and defalcations of said Stensland, were grossly and culpably negligent in the performance of their duties, and by reason thereof are liable to the depositors and creditors of said bank for all losses sustained; that said bank is absolutely insolvent; that on the date last mentioned the actual value of all the assets of said bank was less than $3,788,000 and that the total liabilities of said bank to its depositors and creditors is $4,240,465.87, and that by reason of the said misappropriations the capital, surplus amounting to $250,000 and a large amount of undivided profits have been wholly lost, and in addition thereto the assets of said bank have been encroached upon to the extent of about $450,000; alleges that on August 6, 1906, the assets of said bank included loans then outstanding, made to various individuals, firms and corporations, largely in excess of ten per cent of the amount of its capital stock, in violation of the provisions

of section 10 of the act heretofore mentioned, and that thirteen of such loans so carried aggregate the sum of $763,-888.25; alleges that certain persons (naming them) are the stockholders in said bank, setting out the number of shares owned by each and the par value of the same.

The bill further alleges that on said 6th day of August the said Auditor, by virtue of section 8 of the act aforesaid, began an examination of the affairs of said bank and caused the doors thereof to be closed, posting a notice thereon stating, in substance, that the bank was in the hands of the Auditor of Public Accounts for the purpose of examination, and alleges that as a result of such examination it appears that the capital stock of said bank has become impaired; that said bank is absolutely insolvent, and that although a considerable time has elapsed since the result of such examination has become a matter of public knowledge, the officers and stockholders of said bank have made no effective effort to supply the necessary funds to meet its obligations.

The bill further alleges that on August 7, 1906, while said bank was in charge of said Auditor for the purpose of examination, and before it had, in fact, ceased doing business and before it was definitely ascertained that said bank was insolvent, a bill was filed in the superior court of Cook county by Molli Jakubowitz and Rosie Siegelman against the said bank, which alleges, among other things, that they brought the suit on behalf of themselves and all the other creditors who might choose to join in and contribute to the expense of the same; that said bank is a banking corporation organized under the laws of the State of Illinois, and that defendant conducted a bank upon Milwaukee avenue, in the city of Chicago, Cook county, Illinois; that Rosie Siegelman is a creditor and depositor in said bank in the sum of $160 and that Molli Jakubowitz is a creditor and depositor in said bank in the sum of $132.80, and that said bank is indebted to them in the respective sums aforesaid;

alleges that on August 6, 1906, said bank became financially embarrassed and ceased to do business; that its doors are now closed to the public, and complainants are informed that its officers have left the city of Chicago for parts unknown and have ceased to take any charge of the said business of said bank or have any connection therewith; that said bank is hopelessly insolvent and is indebted to persons in a sum largely in excess of its assets; that the creditors of said bank number more than 20,000 persons and are largely persons of small means, and that unless a competent person is appointed receiver to take charge of and conserve the assets of said bank, they and other creditors of said bank will suffer irreparable injury. The bill makes the said bank defendant and prays for the appointment of a receiver with power to collect and distribute the said assets under the direction of the court. In support of the bill is the affidavit of Molli Jakubowitz stating that the same is true in substance and in fact, except as to the matters therein stated upon information and belief, and as to those matters she believes them to be true, and that unless a receiver is appointed without notice, affiant and other complainants and creditors of said bank will sustain irreparable injury.

The bill herein further alleges that the verification of said bill was wholly insufficient, and that the said superior court, without other evidence of the truth of the allegations of said bill and without jurisdiction to grant the relief prayed for therein, on the filing of the said bill ordered that one John C. Fetzer be appointed as such receiver upon the complainants entering into a bond to defendant in the sum of $10,000 and upon the said receiver giving bond in the sum of $1,000,000 for the faithful performance of his duties; that it was further ordered that defendant deliver to said receiver all books of account, securities and evidences of indebtedness and effects belonging to it, and that said Fetzer from time to time make report to the court of his acts and doings as such receiver; alleges that afterward,

on August 8, 1906, the said bill in said superior court was amended by inserting therein a prayer for the dissolution and closing up of the affairs of said bank, and that said receiver should have authority to do all things necessary to the closing up of its affairs, and on the same day said superior court entered an order authorizing the said receiver to employ such help as he deemed necessary, and to do all the necessary and proper acts to conserve, protect and collect the assets of said corporation; that on the 10th day of August, 1906, the superior court entered an order referring the said cause to the master in chancery of said court for the examination of such persons as may be produced, concerning the assets of said corporation; that afterwards, on August 15, 1906, the bill in said superior court was again amended by setting out the insolvent condition of said bank, naming the stockholders, with the number of shares owned by each; alleging that the liabilities of said bank were from three to five million dollars and that said stockholders were individually liable to said creditors for said amount, and made said stockholders parties defendant; that afterwards, on August 17, 1906, the said court entered an order directing said John C. Fetzer to pay a dividend of twenty per cent on the amount of the verified claims filed with him, out of the assets in his hands, and ordering him to notify all persons claiming to be creditors of said bank to file their claims with him, duly verified, within thirty days from the date aforesaid; that on the date aforesaid a bill was filed in the said superior court by the Polish National Alliance of the United States of America against the said Milwaukee Avenue State Bank, claimed to be filed in support of the bill of Molli Jakubowitz and Rosie Siegelman against said bank, which alleged, among other things, that the said Polish National Alliance was a fraternal beneficiary society organized under the laws of Illinois; that it had collected from its members assessments amounting to $48,427.60 for the payment of death claims, and that said fund had been deposited

in the Milwaukee Avenue State Bank to the credit of said Polish National Alliance and was on deposit in said bank on August 6, 1906; that payments of death benefits are made to beneficiaries by means of checks, and that since the appointment of said receiver in said superior court certain checks drawn by said Polish National Alliance upon said fund in said bank not having been paid, have been protested, and certain other checks have been tendered back to said Polish National Alliance by the holders thereof, who were unable to obtain payment thereon at said bank; alleges that it has brought suit in said superior court against said bank to recover the said sum so deposited and due it from said bank; that said funds collected and held for the purpose above set forth are trust funds and wholly exempt from the claims of the creditors of said bank, and prays, among other things, that the receiver appointed be decreed to pay to said Polish National Alliance the amount due it from said bank as a preferred claim. On the same day the said superior court entered an order consolidating the said cause with the case of Jakubowitz and Siegelman against said bank, and thereafter, on August 23, 1906, entered an order authorizing the said receiver to permit certain debtors of the said bank to offset the amount of their deposits in said bank against said claims, and authorizing said receiver to accept the balance due said bank and surrender and cancel the notes and evidences of indebtedness held against them.

The bill further alleges that said Fetzer, upon the entry of the order of said court appointing him receiver, gave the bond required of him, and thereupon, claiming to be receiver of said bank, proceeded to take possession of said property and assets of said bank and oust said Auditor, although he was in possession for the purpose of ascertaining the condition of said bank, that he might be enabled to take such action as was necessary for him to take under the provisions of said act hereinbefore referred to; that said Fetzer proceeded to and is now proceeding to collect the assets of said

bank and to convert certain other assets into money and pay out the moneys of said bank and to generally assume charge of said property; that he has employed a large number of persons to assist him in the performance of his duties, and has incurred, and is now incurring, a large expense, and that, acting under the orders of said superior court, he is settling and compounding claims held by said bank and assuming all powers of a receiver legally appointed; that he claims to be a receiver of said bank by virtue of the orders entered on the filing of the original bill in said superior court and of the said bill of the Polish National Alliance, and the bill herein alleges that said bills are wholly without equity, and that said superior court acted without jurisdiction in entertaining the bills aforesaid, in the appointment of said receiver and in entering the subsequent orders. The bill further alleges that there is great danger that the various creditors of said bank will institute attachment and other legal proceedings, to the irreparable injury of the remaining creditors, unless a receiver is appointed forthwith, and that to prevent further losses, waste and depreciation it is imperative that said receiver be appointed; that said Fetzer is well qualified to perform the duties that devolve upon the receiver of said bank, and complainant believes that his appointment will be for the benefit of the depositors and creditors of said bank.

The Milwaukee Avenue State Bank and its stockholders, the complainants in the bills filed in the superior court, John C. Fetzer and others are made defendants. The bill prays for the appointment of a receiver for the purpose of dissolving said bank and the winding up of its affairs and for an injunction restraining said Fetzer from further proceeding to administer upon said estate, and that he be ordered to surrender possession of said bank and turn over all the assets in his possession to the receiver appointed by the circuit court. The bill was later amended from time to time, making additional persons parties defendant.

On October 23, 1906, the court entered an order denying the motion of complainant for the appointment of a receiver, and at the same time denied the motion of the Polish National Alliance to dismiss the bill for want of jurisdiction, and also its motion to transfer the said cause to the superior court. Practically all of the defendants interposed general demurrers to the bill, and on April 17, 1907, upon a hearing the court entered an order sustaining each of them and dismissing the bill for want of equity. From the decree complainant appeals to this court, and contends that the court erred in sustaining the demurrers and in dismissing the bill.

W. H. STEAD, Attorney General, and THOMAS E. DEMPCY, (W. H. BOYS, of counsel,) for appellant.

ARCHIBALD CATTELL, and DAVID F. MATCHETT, for appellee the Milwaukee Avenue State Bank; JOSEPH WEISSENBACH, and HIRAM T. GILBERT, for appellee Fetzer; WEISSENBACH & MELOAN, for appellees Jakubowitz and Seligman; HENRY S. WILCOX, (JESSE WILCOX, of counsel,) for appellee Crane; ARTHUR W. UNDERWOOD, and GOODRICH, VINCENT & BRADLEY, for appellees Peabody, Cooper and Pringle.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The Auditor of Public Accounts contends that he was empowered to file the bill herein by section 11 of chapter 16*a*, Hurd's Revised Statutes of 1905, which, so far as material, is as follows: "Should the capital stock of any bank organized under this act become impaired the Auditor shall give notice to the president to have the impairment made good by assessment of the stockholders or a reduction of the capital stock of such bank, if the reduction should not bring the capital below the provision of this section; and if the capital stock of said bank shall remain impaired

for thirty days after notice by the Auditor, he shall have power, and it is hereby made his duty to enter suit against each stockholder in the name of the People of the State of Illinois, for the use of said bank; for his or her *pro rata* proportion of such impairment, and when collected shall pay over the amount thereof to said bank, and the judgment in such case shall be for the amount claimed, with all costs and reasonable attorney's fees, which fees shall be fixed by the court, or he may, in his discretion, file a bill in the circuit court of the county in which said bank is located, in the name of the People of the State of Illinois, against said bank and its stockholders, for the appointment of a receiver for the winding up of the affairs of said bank. And said court, upon the presentation of said bill, and upon being made satisfied that the capital of said bank has become impaired, shall immediately appoint a competent and disinterested person as such receiver, and shall determine and fix his bonds, and shall prescribe his duties. And said cause shall proceed as other cases in equity."

The arguments of counsel have taken a wide range. We find it necessary to discuss but one of the questions presented. The bill does not aver that the Auditor gave notice to the president of the bank to have the impairment of the capital stock made good by the assessment of the stockholders or otherwise, and it is the view of the Attorney General that this notice is not necessary when the Auditor elects to proceed in equity and not at law. In other words, that the giving of the notice is not a condition precedent to filing a bill by the Auditor "for the appointment of a receiver for the winding up of the affairs of said bank." If this construction be correct the Auditor would have the right to file the bill and it would become the duty of the court to appoint a receiver, however trifling the impairment of the capital might be, without the stockholders having had an opportunity to make good the impairment. The discretion lodged in the Auditor as to the method by which he

shall proceed is an arbitrary one, and when the time for its exercise arrives, the manner of its exercise does not depend upon the existence or non-existence of facts which lead him to believe that the financial condition of the bank and its stockholders is such that the impairment of the capital stock cannot be made good, or that the bank is insolvent, or that the bank is about to become insolvent, or that the bank is of doubtful solvency. We think the plain intent of the statute is, that if the Auditor finds the capital stock impaired he shall give a thirty day notice to the president, or if, as here, it is not feasible to do that, then to the officer or officers upon whom devolves the performance of the duties of the president, and in the event that the impairment of the capital stock is not made good during that period, then the Auditor may elect to proceed at law or in equity, as he sees fit. We think it was not the purpose of the legislature to make it optional with him to give the thirty day notice and proceed at law after the expiration of that period, or to proceed in equity without giving any notice.

It is urged that this construction leaves the Auditor without power to secure the appointment of a receiver for a period of thirty days in cases (such as the present) where it was practically certain that the stockholders would not make good the impairment of the capital stock, and that this would expose the creditors and stockholders to the danger of greater loss than was made necessary by conditions existing when the Auditor first ascertained that the capital stock had been impaired. This argument, while persuasive, is, we think, one that should be addressed to the legislature rather than to the courts. The present General Assembly has passed an act amending section 11, *supra*. (Session Laws of 1907, p. 52.) This amendment, if ratified by a vote of the people, will eliminate the question we have been discussing, in litigation arising after it takes effect. The amendment does not give to the Auditor the power to obtain the appointment of a receiver merely upon discovering an

impairment of the capital stock, but provides that if it appears to the Auditor that the conditions are such that the impairment cannot be made good, or that the business of the bank is being conducted in an illegal, fraudulent or unsafe manner, he may at once file a bill for a dissolution of the corporation and the appointment of a receiver. This amendment, which is remedial in character, is, we think, in itself an indication that the legislature did not regard the present law as conferring the right which is claimed for the Auditor. It is perhaps true that the interests of stockholders and creditors would be better conserved if we could give to the statute now in force the construction for which the Attorney General contends, but that we cannot do without disregarding the plain provisions of the act.

We are of the opinion that the demurrers were properly sustained, for the reason that it did not appear from the bill that the notice required by section 11, *supra*, had been given.

Accordingly, the decree of the circuit court will be affirmed.

*Decree affirmed.*

VICKERS, J., and HAND, C. J., dissenting:

We do not concur in the opinion of the majority of the court in this case. The conclusion is reached by construing section 11 of chapter 16a of Hurd's Revised Statutes as requiring the Auditor to give the president of any bank organized under the State Banking act, the capital stock of which has become impaired, thirty days' notice before filing a bill in equity against such bank and its stockholders for the appointment of a receiver and for winding up the affairs of such bank. The section of the Banking act under consideration is set out in full in the foregoing opinion and need not be here repeated. By reference to said section it will be seen that provision is made for an action at law against the stockholders and an action in equity against the bank and

the stockholders. When the entire section is carefully ana-
lyzed, marked differences will appear in the two remedies,
both in the means to be employed and the objects to be at-
tained. In the action. at law the suit is against each stock-
holder for his *pro rata* share of the impairment of the
capital stock, and the judgment, which includes "all costs
and reasonable.attorney fees" to be taxed by the court, is
for "the use of said bank." In these suits against the stock-
holders, which apparently must be several and not one joint
action against all, the bank, as a corporate entity, is the real
beneficial plaintiff. It is clear to our minds that in provid-
ing this legal remedy against the stockholders it was in-
tended that the Auditor should resort to it in all cases where
the conditions were such that it would be efficacious. It is
not applicable to a case of insolvency where the only thing
that can be done is to throw the institution into involuntary
liquidation. For this purpose the equitable remedy is pro-
vided. The bill in equity is not a suit for the use of the
bank, but its manifest purpose is to take the control of the
bank out of the hands of its officers and place it under the
direction of a court of equity, through its receiver, so that
its assets may be collected and distributed to the creditors.
It is not to be presumed that the more drastic remedy in
equity would be resorted to in any case where the remedy
at law would prove adequate. The legislature has left the
selection of the remedy to the discretion of the Auditor. It
seems that the vesting of this power in the Auditor has ex-
cited the apprehension of the majority of this court lest this
discretion might be abused and a bill be filed for a receiver
when only a slight impairment of capital existed. In our
opinion this argument is unsound. Experience has shown
that discretion vested in executive officers of the govern-
ment is not abused more frequently than when vested in
judicial officers. Under section 5434 of the statutes of the
United States, (1878,) and the amendments thereto, the
comptroller of the currency is given much greater power in

respect to national banks than section II of our statute confers on the Auditor in regard to State banks. Under the Federal law the comptroller is authorized, when he becomes satisfied that a national bank is not complying with the law by paying its circulating notes, to appoint a receiver and proceed to wind up the affairs of the bank. The comptroller is in such case vested with power far greater than is conferred on the Auditor under the statute, yet we have to learn, in the more than thirty years that this power has resided in the comptroller, of a single instance where it has been unwisely or capriciously exercised. If the comptroller can thus be safely entrusted with such a power over national banks, is it reasonable that the legislature of Illinois would be deterred by the possibility suggested in the majority opinion from conferring the limited and guarded power on the Auditor? We think not. In our opinion the law-making department intended to pass a workable banking law for the government of State banks, and that in the system devised it was intended that the Auditor should exercise powers of the same general character over State banks that the comptroller exercises over national banks. In a case such as the one presented here, where the president of the bank is a defaulter and is a refugee from criminal justice, it is idle to say the Auditor must give thirty days' notice before he can file a bill to have a receiver appointed. The facts recited in the bill in this case furnish a striking illustration of how the rights of creditors may be imperiled by so construing the statute as to compel the Auditor to stand idly by for thirty days after he knows the bank is insolvent, thus allowing time enough for the defaulting and dishonest bank officials to complete the work of devastation before any restraining action can be taken. Here the bill charges that the president of the bank, with the aid and connivance of the cashier, had misappropriated about $1,000,000 of the bank's assets, and when unable longer to conceal the shortage by false and fictitious book-keeping, the president fled the country, and

when last heard of was in hiding in Morocco, Africa. It seems to us that the legislature must have had in contemplation such emergencies as exist here, and that to meet them it was intended that the Auditor should have power to proceed at once, and without notice, to file a bill and have a receiver appointed. If it be said that the creditors may proceed by bill on their own account and secure the same relief, we reply that this argument proves too much. If good, it affords a reason for dispensing with State supervision over State banks entirely. If creditors can take care of themselves, why give the Auditor any power to act in any case, either with or without notice? It is reasonable to suppose that the legislature intended to safeguard the rights of depositors in State banks by conferring a substantial and beneficial power on the Auditor to do something on behalf of the creditors that they could not do for themselves. Creditors may file a bill, it is true, but before doing so they must obtain judgments and have execution returned *nulla bona,* and it was, no doubt, in part to obviate the delay incident to such a course that the power was conferred on the Auditor to proceed at once when, in his discretion, the safety of depositors indicated such course. The view of the majority virtually defeats this salutary purpose by tying the hands of the Auditor until action on his part will become, in many cases, wholly barren of results.

In the view we take of this statute the thirty days' notice has no application to the suit in equity but is limited to actions at law against the stockholders. This section of the statute is remedial, and was adopted by the people for the purpose of placing State banks under the control of the State, in order that they might merit and enjoy the confidence and patronage of the public to the same extent and for the same reasons that national banks do. The opinion of the majority, it seems to us, takes away all the safeguards that the legislature intended to throw around these institutions, and results at once in a great injustice both to the

banks and their patrons. In construing a statute the intent of the legislature is the controlling consideration.

In presenting these dissenting views we have sought to point out briefly some of the reasons which seem to forbid our attributing to the legislature an intent to do a thing so unreasonable and inconsistent as requiring a thirty days' notice before filing a bill for a receiver. The language of the section does not imperatively demand such construction, and since, as we have sought to show, such construction tends to encourage the very evil intended to be remedied, the construction adopted by the majority should be rejected and one adopted which will accomplish, and not defeat, the legislative intent.