JOHN DOLESE *et al.*

*v.*

DANIEL A. PIERCE.

*Filed at Springfield March 15, 1888.*

1. STATUTES—*amendatory acts—how far limited to the subjects of the acts proposed to be amended.* An act to amend certain sections of a prior act whose title is mentioned, will relate to the same general subject, and there can be no valid provisions in either act which do not relate to that subject.

2. An act to amend certain sections of a general law is limited in its scope to the subject matter of the sections proposed to be amended. In such case, the introduction of any new substantive matter not germane or pertinent to that contained in the original sections, can not be regarded as an amendment thereto, but must be regarded as independent legislation upon a matter not embraced in the title of the act, and therefore void.

3. The amendment of an act in general, or of a particular section of an act, *ex vi termini*, implies merely a change of its provisions upon the same subject to which the act or section relates.

4. SAME—*title of the amendatory act of 1874 "to revise the law in relation to township organization"—scope of the act, as affecting the boundaries*

*of cities and villages—constitutionality.* The act entitled "An act to amend sections 2, 4, 6, 7, 10, 11 and 12, of article 3, of an act entitled 'An act to revise the law in relation to township organization,' approved and in force March 4, 1874," in so far as it attempts to change the boundaries of cities and incorporated villages, is in violation of section 13, article 4, of the State constitution, as embracing more than one subject.

5. The act mentioned expressed in its title that it was to amend certain sections of an act in relation to township organization, which sections provided for the making of new towns from old ones, changing town boundaries, and the division and consolidation of towns and parts of towns, but they did not profess to relate to incorporated cities or villages in any manner. The amendatory act, after providing in respect to towns, and changes therein, directed that when the town to which new territory should be annexed is wholly within the limits of a city, the city limits shall be extended to include the territory so annexed: *Held,* that the act, in so far as it assumed to provide for a change in the boundaries of cities and villages, that subject not being embraced in the title of the act, was in violation of article 4, section 13, of the constitution.

6. Any provision in an act which has not a tendency to promote the object and purpose of the act to which it belongs, is clearly obnoxious to the constitutional provision.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. JAMES P. ROOT, for the appellants:

The act in question is void because it embraces more subjects than are expressed in the title. (Sec. 13, art. 4, Const. 1870.) The title embraces nothing but the subject of township organization, while the act assumes to legislate on the subject of cities and villages, and the subject of annexation as applied to them, as well as on various other subjects not germane to the subject expressed in the title.

Mr. SIDNEY SMITH, also for the appellants:

The statute, so far as complained of, is in violation of section 13, article 4, of the constitution. *O'Leary* v. *Cook County,* 28 Ill. 534; *People* v. *Mellen,* 32 id. 181; *People* v. *Protestant Deaconesses,* 71 id. 229; *Railway Co.* v. *Lake View,* 105 id. 207.

In determining the powers of the county board, this statute should be strictly construed against the power claimed. In

case of reasonable doubt, it should be construed against the power. Dillon on Mun. Corp. sec. 55, and cases cited in note; *Mather* v. *City of Ottawa,* 114 Ill. 659.

This board must strictly pursue the methods prescribed by this statute. It can exercise the powers expressly granted only in the manner prescribed by the statute. There can be no dealing in equivalents. *Fitch* v. *Pinckard,* 4 Scam. 69; *Hardin* v. *McFarlan,* 82 Ill. 138; *People* v. *Village of Crotty,* 93 id. 180.

Mr. JOHN N. JEWETT, also for the appellants.

Mr. HENRY V. FREEMAN, also for the appellants:

The act itself not having been complied with, the board had no power to call an election, and its action was void. *Marshall County* v. *Cook,* 38 Ill. 48; *Force* v. *Town of Batavia,* 61 id. 102; *People* v. *Cline,* 63 id. 397; *Harding* v. *Railroad Co.* 65 id. 90; *Williams* v. *Town of Roberts,* 88 id. 11; *Gaddis* v. *Richland Co.* 92 id. 119; *Richland* v. *People,* 3 Bradw. 210; *Chambers County* v. *Clews,* 21 Wall. 317; *Lamier* v. *Padgett,* 18 Fla. 842.

The jurisdiction of the county board is limited by the terms of the statute itself, and it must appear that the statutory preliminaries had been complied with where jurisdiction is limited. *Prosser* v. *Secor,* 5 Barb. 610; *Stone* v. *Miller,* 62 id. 442; *Harrington* v. *People,* 6 id. 608; *Walker* v. *Mosely,* 5 Denio, 102.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The legislature, at its last session, passed an act entitled "An act to amend sections 2, 4, 6, 7, 10, 11 and 12, of article 3, of an act entitled 'An act to revise the law in relation to township organization,' approved and in force March 4, 1874." (Laws of 1887, p. 300.) By the 12th section of the act as amended, it is provided that "the county board of each county

shall have full power and jurisdiction to unite into one, two or more contiguous towns, whether incorporated under any special or general act, or organized under this act, and to disconnect territory from one of such towns and annex the same to another; but no such towns shall be united, nor shall territory be taken from one such town and at the same time annexed to another, except in the following manner." The act then proceeds to prescribe the manner of carrying its provisions into effect, after which occurs the following proviso: "*And provided,* that where said town to which such territory is annexed is wholly within the limits of an incorporated city, *the limits of said city shall thereupon be extended to include the territory annexed to such town.*" Pursuant to the provisions of said section, on the 3d of October, 1887, a petition, signed by the requisite number of legal voters of the town of Hyde Park, was presented to the board of commissioners of Cook county, praying that a specifically designated portion of said town be disconnected therefrom and annexed to the adjoining town of South Chicago, both of which towns lie in the county of Cook, and the latter wholly within the corporate limits of the city of Chicago. The county authorities, under the provisions of the act, submitted the matter, as therein directed, to a vote of the people of the two towns, and upon a canvass of the votes cast, the requisite majority was found to be in favor of the proposed change in the boundaries of said towns, and it was so declared. The corporate authorities of Cook county, and of the city of Chicago, have both officially recognized the alleged new order of things, and the latter are now exercising municipal jurisdiction over that portion of the town of Hyde Park claimed, by virtue of said proceedings, to have been disconnected therefrom and made a part of the town of South Chicago. The village of Hyde Park, which was incorporated under the general law in 1872, and whose territorial limits and municipal jurisdiction, prior to said proceedings, were co-extensive with the town of Hyde Park, does not acquiesce in the action taken by the two

towns and the county board, in so far as it is sought to affect its own jurisdiction and powers as an incorporated village within the alleged disconnected territory, but disregards such action altogether.

After the disconnection and annexation proceedings were consummated, which occurred on the 3d day of December, 1887, the village of Hyde Park, not regarding such action as binding upon it, ordered certain improvements to be made upon some of the streets in the alleged disconnected territory which appellants claim is still a part of said village. The contract for the work on the streets was let to John Dolese and Jason H. Shepard. The work, amounting to $600, was satisfactorily performed, the claim properly audited and certified as correct, and by order of the board of trustees, a warrant for the amount was drawn on the village treasurer, signed by the village clerk, and only wanted the signature of Daniel A. Pierce, the president of the board of trustees, to make it a valid voucher for the payment of the claim, provided the village of Hyde Park, as claimed by it, is unaffected by said annexation proceedings. The president refused to sign the voucher, on the sole ground that the streets on which the work was done were not within the territorial limits or jurisdiction of the village of Hyde Park, and that said village consequently had no power or authority to incur the indebtedness in question. The contractors, Dolese and Shepard, thereupon filed a petition for a *mandamus*, in the Superior Court of Cook county, against Pierce, to compel him to sign said warrant on the treasurer. The Superior Court, on demurrer to the petition, held it insufficient, and entered an order dismissing the same at the petitioners' costs, from which order the present appeal is prosecuted.

After perfecting the appeal in this court, a motion was filed therein to dismiss the *suit*, on the ground that it had been collusively brought, and was not being prosecuted in good faith. This motion was reserved for the hearing of the cause on its merits. We do not think that the proofs offered in

support of the motion are sufficient to sustain it, and it must therefore be overruled.

The main question to be considered is the validity of that part of the act of 1887 under and by virtue of which it is claimed that the greater part of the village of Hyde Park, with all its property and improvements, has been transferred to and made a part of the city of Chicago. There are other grave and important questions presented by the record, but in the view we have taken of the one stated, it will not be necessary to notice them.

Section 13, article 4, of the present constitution, among other things, provides, that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in its title; but if any subject shall be embraced in an act, which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be so expressed." It is earnestly insisted by appellants that the act of 1887, in so far as it attempts to deal with cities or villages by limiting or extending their territorial boundaries and jurisdiction, is obnoxious to this provision of the constitution; that the legislature, in attempting to accomplish these objects, has introduced into the act a distinct, independent subject, which is neither embraced in its title nor germane to that which is embraced in it.

After a very careful examination of the act and all the authorities cited in the briefs, besides many others not referred to by counsel, we feel constrained to hold, as we do, that the act of 1887 is, in the respect stated, unconstitutional and void. As the title of the act of 1874 is included in and constitutes a part of the title of the act of 1887, it follows that both acts relate to the same general subject of "township organization," and consequently there can be no valid provisions in either which do not relate to that subject. But it does not follow that the subject of each act, in a constitutional sense, is necessarily co-extensive with such general subject, for restrictive

10—124 ILL.

terms are found in the title of the latter act which do not
appear in the first, and which materially limit its scope and
purpose. The act of 1874, as appears from its title, extends
to a revision of the entire law then existing, relating to town-
ship organization, while that of the act of 1887 is expressly
limited to the amendment of certain specified sections of the
law as revised by the former act. This being so, it is clear
that the scope of the act of 1887 is limited by the subject
matter contained in the amended sections before amendment,
for to introduce any new substantive matter not germane or
pertinent to that contained in the original sections, could, in
no proper sense, be regarded as an amendment of them, but
would manifestly be additional, independent legislation upon
a matter not embraced in the title of the act, and consequently
void.

The amendment of an act in general, or of a particular
section of an act, *ex vi termini*, implies merely a change of its
provisions upon the same subject to which the act or section
relates. These propositions are so elementary in their char-
acter as to require neither argument nor citation of authority
in their support.

Turning to the amended sections, as they appear in the act
of 1874, it will be found that they treat exclusively of making
new towns out of old ones; re-adjusting the boundary lines of
adjacent towns, by detaching territory from one and adding it
to another; the uniting of two contiguous towns into one, and
of the manner of accomplishing these objects, including the
adjustment of the property rights and liabilities of the towns
affected. There is no attempt in either of the sections to deal
with cities or villages in any manner whatever. Indeed, the
word "city," or "village," does not even so much as incidentally
occur in said sections, or either of them, nor is the slightest
allusion to be found in them on that subject. This being so,
upon what principle or show of reason can it be contended
that the provision in the act of 1887 which attempts to deal

with cities and villages, is, in any sense, an amendment of the sections named in the former act? Or how can it be seriously contended that such a provision relates to township organization? And yet, both these propositions must be maintained in order to sustain the provision in question.

It is said, however, that legislation affecting the boundaries of cities and villages is germane to that affecting the boundaries of townships. But counsel have failed to tell us in what way or sense the one is germane to the other, or what meaning they attach to that term in giving a construction to the provision of the constitution in question. Literally, "germane" means "akin," "closely allied." It is only applicable to persons who are united to each other by the common tie of blood or marriage. When applied to inanimate things, it is, of course, used in a metaphorical sense, but still the idea of a common tie is always present. Thus, when properly applied to a legislative provision, the common tie is found in the tendency of the provision to promote the object and purpose of the act to which it belongs. Any provision not having this tendency, which introduces new subject matter into the act, is clearly obnoxious to the constitutional provision in question. It is an error to suppose that two things are, in a legal sense, germane to each other merely because there is a resemblance between them, or because they have some characteristics common to them both. One might, with just as much reason, contend that two persons are necessarily akin because they are of the same complexion, or in other particulars alike.

Under the title of the act of 1887, the legislature had the right to provide, as it did, for the change of township boundaries, but this right did not carry with it, as an incident, the power to change the boundaries of cities and villages, unless the change of the latter was necessary to effectuate a change of the former, or at least to promote such object, and nothing of this kind is pretended. The only thing claimed,—or which can be truthfully claimed,—is, that there is some resemblance,

or that there are common characteristics, between townships and cities and villages. But this is equally true of all corporate bodies. While townships are regarded as municipal corporations, in the general sense of that term, yet they stand upon a plane altogether different from that occupied by cities and villages. The latter are possessed of a much higher order of corporate existence than the former, and differ from them in many essential particulars. They are, in law and in fact, as distinct from one another as any two artificial beings could be, whatever their supposed resemblances may be. This is equally so with respect to their organization and jurisdiction. In the exercise of the powers conferred upon them, they act wholly independently of each other, even where their jurisdiction extends over the same people and territory. Looking at the provisions of the amendatory act of 1887, which relate exclusively to townships, we find nothing there which was not fully provided for in the act of 1874, and consequently fail to discover the object or purpose in amending the latter act. It is only when we turn to those provisions relating to cities and villages that such object and purpose become apparent.

Looking at the act as a whole, it is difficult to repel the conviction that it is nothing more than a method of extending, almost indefinitely, the limits of the great cities of our State without consulting the people living in them, or at least but a small portion of them, and all this without a word in the title of the act to indicate such a purpose. By the proceedings under the act, if sustained, the territorial limits of the city of Chicago have been more than doubled by the addition of some thirty-seven square miles of new territory. The rich and prosperous village of Hyde Park has been practically destroyed as a separate municipality. The most valuable part of it has been transferred to and made a part of its great and populous neighbor. But with the territory thus transferred to the city, the act generously transfers along with it the village ordinances regulating and restraining the sale of intoxicating liquors,

whereby the city has acquired the peculiar, though somewhat anomalous, distinction of having one code of ordinances for one part of its territory and a different code for the remaining part. The act also contains elaborate provisions for the establishment and maintenance of park districts. And yet all this is done and proposed to be done under an act whose title is limited to the simple and apparently harmless purpose of amending seven sections of the township organization law, relating to the change and re-adjustment of the boundaries of townships! It is difficult to conceive of a title that more effectually concealed the real object and purpose of an act than the present one does. The constitution forbids and condemns all such devices. Whether intended to be so or not, they are frauds upon the legislature and the people of the State. That the act of 1887, to the extent stated, is unconstitutional and void, is conclusively shown by the following authorities: *Lockport* v. *Gaylord*, 61 Ill. 279; *People* v. *Institution of Protestant Deaconesses*, 71 id. 229; *People* v. *Mellen*, 32 id. 181; *Welch* v. *Post*, 99 id. 471; *North Chicago City Railway Co.* v. *Lake View*, 105 id. 207.

To the suggestion, that as the new order of things is an accomplished fact, great inconvenience will result from holding the act unconstitutional, it is sufficient to say, that however great the inconvenience, it is far better that it should be borne than to have the constitution trampled under foot, and one of its main safeguards against fraudulent legislation frittered away. Whatever difficulties may be encountered in the re-adjustment of matters, are probably attributable, in a large degree, to hasty action, and that, too, in the face of litigation instituted for the purpose of testing its legality. This court can not afford to permit itself to be embarrassed or handicapped in the decision of a grave constitutional question by considerations of this kind. The highest duty and most sacred function of this court is to protect and enforce the constitution, regard-

less of all real or imaginary inconveniences that may result from doing so.

The judgment of the Superior Court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.　　　　　　　　　　　　　*Judgment reversed.*

Sheldon C. J., and Scott J., dissenting.