W. E. STEVENSON, County Treasurer, Appellant, *vs.* MALINDA B. MONTGOMERY *et al.* Appellees.

*Opinion filed April 23, 1914.*

1. CONSTITUTIONAL LAW—*provisions of the statute for administration of estates of persons presumed to be dead are not invalid.* The provisions of sections 20a and 78, added in 1911 to the general Administration act, which provide for the administration of the estates of absent persons upon proof of such facts as raise the legal presumption of death, are not unconstitutional, as an attempt to confer jurisdiction upon county courts to administer the estates of living persons.

2. SAME—*provisions of sections 20a and 78 of Administration act are within the title of such act.* The provisions of sections 20a and 78, added in 1911 to the general Administration act and relating to the administration of the estates of absent persons presumed in law to be dead, are within the title of the act, which is, "An act in regard to the administration of estates," even though it is true that the "estates" contemplated by the act are estates of deceased persons, and that if the person presumed to be dead is, in fact, alive, he is not affected by the distribution of his estate after the payment of costs, expenses and claims.

3. ADMINISTRATION—*letters may be granted upon estate of a person presumed to be dead.* If a person has been absent from her last place of residence without having been heard from for seven years by those who would naturally hear from her if she were alive, and if diligent but ineffectual search has been made wherever there is a reasonable probability that she might be found or information obtained leading to the discovery of her whereabouts, a presumption of death arises and authorizes letters of administration to issue upon her estate.

APPEAL from the Circuit Court of Warren county; the Hon. GEORGE W. THOMPSON, Judge, presiding.

J. W. CLENDENIN, for appellant.

CHARLES E. LAUDER, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On March 6, 1913, the appellees, Malinda B. Montgomery and Wilson H. Sloan, filed their petition in the county court of Warren county setting forth that they were cousins of Nannie Sloan, who left said county when a child, with her mother and step-father, and went to the State of Texas, where her step-father was temporarily employed, without any permanent residence, as a contractor in building railroad bridges; that she had not been heard from for more than twenty-five years and upon diligent search and inquiry had not been found, and that there was on deposit with the county treasurer of the said county the sum of $1440.45, deposited by the executor of her grandfather, which had been on deposit for about twenty-two years, and asking for letters of administration upon her estate. The appellant, W. E. Stevenson, county treasurer, answered the petition, denying its sufficiency, and alleging that the court was without jurisdiction to grant letters of administration on the estate of the said Nannie Sloan, alleged to be deceased, for the reason that the sections of the Administration act under which the proceeding was instituted were void because in conflict with provisions of the constitution. The county court denied the prayer of the petition and an appeal was taken to the circuit court, and that court, after hearing the evidence, granted the petition and ordered letters of administration to be issued to Louis H. Hanna, as administrator. From that order this appeal was prosecuted.

The petition was based upon sections 20*a* and 78 of the Administration act, added in 1911 by the act entitled, "An act to amend sections 20 and 21 of an act entitled 'An act in regard to the administration of estates,' approved April 1, 1872, in force July 1, 1872, as amended, and to add to said act two new sections, one to be known as sec-

tion twenty 'a' (20a) and the other as section 78." (Laws of 1911, p. 1.) Section 20a provides for giving notice of an application for letters of administration which are sought on the presumption of death, and section 78 provides for the adjustment, allowance and payment of costs, expenses, award and claims against the estate of a person presumed, in law, to be dead, but requires a bond from each distributee, or someone in his behalf, conditioned to refund to the presumed decedent, if alive, or to any other person lawfully entitled, all money and other property or estate received by such distributee as heir, and to save harmless the administrator of the estate against all claims or demands of the presumed decedent or persons claiming through or under him.

One ground upon which the above sections are claimed to be in conflict with the constitution is, that section 18 of article 6 gives county courts jurisdiction of the settlement of estates of deceased persons and the sections attempt to confer jurisdiction over the estates of living persons. It is true that county courts can only exercise the original jurisdiction conferred by the constitution over the estates of persons who are, in fact, deceased, and in the absence of statutory authority any proceeding affecting the estate of a living person would be wholly void. It is also true that if any person presumed to be dead is, in fact, alive, any distribution of his estate to those who would be entitled to it if he were dead would be void and would not affect his title. (*Thomas* v. *People*, 107 Ill. 517.) But the sections in question are not designed to authorize administration of the estates of living persons and do not purport to do so. It is only upon a finding of facts from which the law raises a presumption of death that letters can issue or jurisdiction be exercised. In cases to which the sections are applicable there is merely a different mode of proof of the fact of death, and instead of an affidavit of the fact the law permits an affidavit of facts and circumstances raising the legal

presumption of death. Whatever the method of proof may be, if it turns out that the person alleged to be dead is, in fact, alive, the court cannot deprive him of his estate. It is, however, within the power of the State to provide for the administration of the estates of persons who are absent for such a length of time as gives rise to a reasonable presumption of death, and while county courts, under the general authority to settle the estates of deceased persons, are without power to administer the property of a living person, the State may provide for the administration of the estates of persons who are absent for an unreasonable time and may enact reasonable regulations on that subject. (*Connius* v. *Reading School District,* 198 U. S. 458; 3 Am. & Eng. Ann. Cas. 1121.) Jurisdiction for that purpose may be conferred by statute upon county courts. The court could not, by virtue of such a statute, create a personal liability against a living person for want of jurisdiction of his person and could not deprive him of his estate, but no constitutional right is invaded by legislation concerning administration of the estates of absentees upon reasonable notice, so far as the payment of claims, costs and expenses are concerned. The distributee is only entitled to his share of the estate after the payment of costs, expenses and claims, and the statute provides a safeguard to protect the person alleged to be dead, so that he may recover his estate if alive. The sections are not in conflict with section 18 of article 6 of the constitution.

It is also alleged that sections 20*a* and 78 are void under section 13 of article 4 of the constitution, which declares that no act shall embrace more than one subject, which shall be expressed in the title. The act amended is entitled "An act in regard to the administration of estates," which means estates of deceased persons, and the argument is that the administration of the estates of living persons is a subject not expressed in that title. As we have already said, the sections do not, in terms or in fact, purport to

authorize administration upon estates of living persons. An act to amend certain sections of a general law must be limited in its scope to the subject matter of the sections proposed to be amended and must relate to the general subject of the act amended. (*Dolese* v. *Pierce,* 124 Ill. 140.) But the subject matter of these sections is embraced within the general subject of the administration of estates. They are not taken out of the general subject because in a particular case a person alleged to be dead may, in fact, be alive, and may for that reason not be affected by the distribution of his estate after the payment of costs, expenses and claims. Where a person has been absent from his last place of residence without having been heard from for seven years by those who would naturally have heard from him if he had been alive, and where diligent and ineffectual search has been made wherever there was a reasonable probability that he could be found or information obtained leading to the discovery of his whereabouts, a presumption of his death arises and authorizes letters of administration upon his estate. *Whiting* v. *Nicoll,* 46 Ill. 230; *Reedy* v. *Millizen,* 155 id. 636; *Policemen's Benevolent Ass'n* v. *Ryce,* 213 id. 9; *Donovan* v. *Major,* 253 id. 179.

In this case the following facts were proved: Nannie Sloan was born in Warren county about 1867 or 1868. She was the daughter of Thomas Sloan and Nancy Cunningham Sloan. Her father died when she was one or two years' old, and her mother was married in February, 1870, to John Neafie, who was engaged in constructing railroad bridges. Neafie took the child, with her mother, to Texas, where they had no fixed place of abode but lived in a box-car at whatever places bridges were being built on the line of the Texas and Houston Central railroad. The mother died in 1878 or 1879, when Nannie was ten or eleven years of age, and she remained with her step-father for a year or two, and was last seen at Sutton, Texas, on the line of the railroad, near Galveston. After the death of her mother Neafie wrote

263 — 7

to George P. Sloan, her grandfather, inquiring if he should send the child home, but the grandfather was old and declined the responsibility. About 1880 Neafie went to Ohio, where he died, and Nannie was never heard from after 1880, when a search was begun, which was continued as late as July, 1913. Her grandfather died in February, 1881, and the money on deposit was derived from his estate. About twenty-two or twenty-three years ago an attorney undertook the search and wrote perhaps one hundred letters to various post-masters, attorneys and public officials, mostly in Texas. About 1899 another attorney took up the search and went to Texas, visiting the towns and places where Neafie had been located at different times. He examined the records of the railroad company, interviewed persons who knew Neafie and worked with him, talked with forty or fifty people in the various towns, and published notices in newspapers, offering liberal reward for information. All efforts to find the child were fruitless, and advertisements as late as 1913 in newspapers published in Galveston and Houston brought no results. There was evidence that Nannie said she would get something when her grandfather died, and she knew of her people in Warren county, but no communication was ever received from her. Her father and nine of her uncles and aunts died at an early age of consumption, and that disease had been common in her family on both sides. She was a frail, delicate child, and the evidence was sufficient to raise the presumption of death, and also, on account of her age, to raise a reasonable presumption of intestacy and that she left no issue.

The order of the circuit court is affirmed.

*Order affirmed.*