THE PEOPLE *ex rel.* James J. Brady, Auditor, Appellee, *vs.* THE LASALLE STREET TRUST AND SAVINGS BANK.— (WILLIAM L. ELLWOOD *et al.* Appellants.)

*Opinion filed October 27, 1915.*

1. CONSTITUTIONAL LAW—*amendments need not be read on three different days.* Under the constitution of 1870 amendments to bills need not be read on three different days.

2. SAME—*amendments do not destroy identity of act.* Amendments, whether important or unimportant, whether to the title or body of the act, if they are germane to the act cannot be regarded as destroying its identity.

3. SAME—*what is sufficient to show a bill, with its amendments, was printed.* The journal of the senate showing that a certain bill and its amendments was voted to be printed, and the record of the next day's journal that the bill, "having been printed, was taken up and read at large a third time, and the question being, Shall this bill pass, together with the senate amendments thereto? it was decided in the affirmative," are sufficient to show that the bill, with its amendments, was printed before a vote was taken on its final passage.

4. SAME—*object of provision requiring bills to be read three different days.* The object of the provision of the constitution requiring acts to be read on three different days is to give time for deliberation but not to deprive of the opportunity of amendment, which is the result of deliberation.

5. SAME—*when one invalid section will not render whole act unconstitutional.* Where one section of an act is not passed in the manner prescribed by the constitution the remaining sections will still be good unless the valid part and the invalid part are so connected and dependent upon each other that it cannot be presumed that the legislature would have passed the one without the other; and this rule is the same whether the void section is so because of its conflict with some constitutional limitation or because of a failure to observe some constitutional requirement in its enactment.

6. SAME—*part of section 10 of Banking act of 1907 is invalid.* That portion of section 10 of the Banking act of 1907 (Laws of 1907, p. 54,) which purports to fix the amount which any one person, firm or corporation may owe to any bank is invalid, in that it was introduced into the act by a conference committee amendment which does not appear to have been printed, but the invalidity of the amendment does not vitiate the remainder of the act.

7. ELECTIONS—*when substance of a proposition need not be printed on the ballot.*  Where an act upon which a referendum vote by the people is required has been published in the volume of laws of the session of the General Assembly before the election is held, it is not necessary that its substance be printed on the ballot but it is sufficient if its subject is clearly given.

8. SAME—*when proposition need not be submitted in the form prescribed by section 16 of the Ballot law.*  Where an act requiring a referendum vote provides the form in which the question shall be submitted to a vote, that form must be followed in the ballot and not the form prescribed by section 16 of the Ballot law.

9. SAME—*construction of referendum provision of Banking act of 1907.*  The language of the referendum provision of the Banking act of 1907, (Laws of 1907, p. 56,) that the ballots shall be prepared, printed and distributed in accordance with the Ballot law, does not contemplate a compliance with section 16 of the Ballot law, but merely means that ballots in the form prescribed by the Banking act itself shall be prepared and distributed in accordance with the provisions of the Ballot law.

10. SAME—*referendum provision of the Banking act of 1907 requires both alternatives upon the ballot.*  The referendum provision of the act of 1907 for the amendment of sections 4, 5, 10 and 11 of the general Banking law (Laws of 1907, p. 56,) requires that both alternatives shall appear upon the ballot for the voter's choice.

11. BANKS—*stockholders of record are proper parties to bill for receiver.*  Section 6 of the general Banking law, which provides for a public record of the stockholders of a banking corporation, and section 11 of the same law, which provides that a suit for dissolution shall be against the corporation and its stockholders, must be construed together to afford a practical remedy, if possible; and in case a transfer of stock is not recorded as required by law, the stockholder in whose name the stock stands when the suit for dissolution is brought is properly made a party, whatever, if any, may be his liability.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

MOSES, ROSENTHAL & KENNEDY, LIVINGSTON, BACH & LIVINGSTON, RYAN & CONDON, KNAPP & CAMPBELL, OSCAR M. TORRISON, and WALTER W. ROSS, (JOHN R. COCHRAN, of counsel,) for appellants.

P. J. LUCEY, Attorney General, and HIRAM T. GILBERT, Special Counsel, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The People of the State of Illinois, on the relation of the Auditor of Public Accounts, filed a bill in the circuit court of Cook county against the LaSalle Street Trust and Savings Bank and its stockholders for the appointment of a receiver, for the dissolution of the corporation, and for other relief. The bill was afterwards amended, answers were filed, a hearing was had and a decree rendered granting the relief prayed for, from which some of the defendants have appealed.

The bill was filed under section 11 of the "Act concerning corporations with banking powers," as amended by the act of June 3, 1907. (Hurd's Stat. 1913, p. 120.) It is contended that the decree is erroneous because thirty days' notice to have the impairment of the capital stock made good was not given to the president, as required by section 11 before its amendment in 1907. (*People* v. *Milwaukee Avenue State Bank,* 230 Ill. 505.) This contention is based upon the further contention that the amendment of 1907 was not constitutionally passed by the legislature nor constitutionally adopted by the people. The claim is made that the bill does not appear to have been read on three different days in each house and that all amendments to the bill were not printed before the vote was taken on its final passage, and the house and senate journals were introduced in evidence in support of this claim.

It appears from the house journal that the bill originated as House Bill No. 522, and was called up in the order of first reading on March 28, 1907, and read at large the first time and ordered to a second reading. On April 19 it was called up by unanimous consent, and Mr. McGoorty presented an amendment and asked that it be printed for the information of the house, and it was so ordered. On May 1

the bill was again called up, and the journal recites "that having heretofore been read at large a second time on April 19, 1907, it was again taken up." Two amendments were offered,—one to the title, the other striking out all after the enacting clause and inserting in lieu thereof four sections amending sections 4, 5, 10 and 11 of the original act. The amendments were both adopted and it was ordered that the bill as amended be engrossed for a third reading. On May 7 the bill, having been engrossed and amendments printed, was taken up, read a third time and passed. On the same day the passage of the bill in the house was reported to the senate and it was taken up and read at large a first time and referred to a committee. On May 9 the bill having the same number, House Bill No. 522, and the same title, was reported back with amendments and was taken up and read at large the second time, together with the amendments, and ordered to a third reading. On May 10 the bill was taken up and read at large a third time and passed. The secretary was instructed to inform the house of representatives of the passage of the bill and ask its concurrence in the amendments. This was done, and the house refused to concur in the amendments. Thereupon the senate refused to recede from its amendments, appointed a committee of conference and asked for the appointment of a similar committee by the house. The house appointed such committee, and a report was made to the two houses recommending that the house of representatives recede from its action in refusing to concur with the senate as to amendments Nos. 1, 2, 3 and 5 and that the senate recede from its amendment No. 4, and a substitute was recommended in lieu of amendment No. 4. This report was adopted by both houses.

The question is one of identity of the bill. The appellants insist that it appears from the house journal that the bill as finally passed by the house was never read but once, and that upon the third reading in the house. They refer to *Illinois Central Railroad Co.* v. *People*, 143 Ill. 434,

as sustaining their position that changes made in a bill in matters of substance in its progress through the houses of the General Assembly will render the act void unless the bill is read in each house three times after the changes have been made. This position is not in accordance with the law of this State and the case cited does not sustain it. Under our constitution, amendments to bills need not be read on three different days. (*People* v. *Wallace,* 70 Ill. 680; *People* v. *Brady,* 262 id. 578.) This bill was given the number 522 when it was first introduced in the house. It retained that number throughout its course in both houses. It purported to amend the act concerning corporations with banking powers, approved June 16, 1887. As introduced its title was, "An act to amend sections 10 and 11" of that act, etc. By the amendment the title was made to read, "A bill for an act to amend sections 4, 5, 10 and 11" of that act, etc. The amendments made in the body of the act in the passage of the bill through the two houses were material and substantial, but the act did not thereby lose its identity as House Bill No. 522 for the amendment of the Banking act. The amendments were all germane to the act and such as might properly be introduced. Amendments, whether important or unimportant, whether to the title or body of the act, if they are germane to the act cannot be regarded as destroying its identity. The object of the provision requiring acts to be read on three different days is to give time for deliberation but not to deprive of the opportunity of amendment, which is the result of deliberation. The journals show a compliance with the requirement that every bill shall be read at large in each house on three different days.

It is further objected that the constitutional requirement that every bill, with all the amendments thereto, shall be printed before the vote is taken on its final passage is not shown to have been complied with. In regard to the senate amendments, the senate journal shows that on May 9 "the bill was taken up and read at large the second time, to-

gether with the following amendments thereto reported this day,"—then follow five amendments; and "the question then being, Shall the report of and amendments reported from said committee be adopted? it was decided in the affirmative; and the question being, Shall the bill be ordered to a third reading and the amendments printed? it was decided in the affirmative." On the next day the senate journal shows House Bill No. 522 "having been printed was taken up and read at large a third time, and the question being, Shall this bill pass, together with the senate amendments thereto? it was decided in the affirmative." Such a record as this was held in *People* v. *McWeeney,* 259 Ill. 161, to show that the bill, with the amendments, was printed before the vote was taken on the final passage in the senate.

There is nothing in the journals to show that the report of the conference committee was printed. That report substituted an amendment in lieu of senate amendment No. 4, which amended section 10 of the Banking act. Section 10 limited the amount of the liabilities to any association which any person, corporation or firm might incur, and as the bill passed the house the limit was one-tenth of the capital stock and surplus of the bank. Senate amendment 4 changed this to one-fifth, the conference committee amendment to fifteen per cent. The failure to print the conference committee's amendment did not render the whole act void but only invalidated the amendment. (*People* v. *Brady, supra.*) The fact that one section of an act of the legislature was not passed in the manner prescribed by the constitution does not, alone, have the effect of destroying the validity of the remaining sections. The rule is the same whether the void section is so because of its conflict with some constitutional limitation or because of a failure to observe some constitutional requirement in its enactment. (*People* v. *Olsen,* 222 Ill. 117.) In either case the act will not be declared void because a part of it was unconstitutional, unless the valid part and the invalid part are so connected and dependent upon

each other that it cannot be presumed that the legislature would have passed the one without the other. (*Noel* v. *People,* 187 Ill. 587; *Sheldon* v. *Hoyne,* 261 id. 222.) The conference committee's amendment which was not printed merely increased the limit of the liability which any one person, corporation or firm might incur to the banking association from ten to fifteen per cent, and it cannot be supposed that the legislature would have regarded the change as so important that they would not have passed the bill without this change.

Section 5 of article 11 of the constitution provides that no act of the General Assembly authorizing or creating corporations or associations with banking powers shall go into effect until submitted to a vote of the people at the general election succeeding its passage and until approved by a majority of the votes cast at such election. It is insisted that the amendment of 1907 was not submitted to the people and voted on in accordance with this section.

The amendment of 1907 provided: "This act shall be submitted to a vote of the people for their ratification, according to article 11, section 5, of the constitution of this State, at the next general election, and the question shall be, 'For the amendment of sections 4, 5, 10 and 11 of the general Banking law' or, 'Against the amendment of sections 4, 5, 10 and 11 of the general Banking law,' and it shall be the duty of the officials now required by law to print and distribute ballots for use in elections to prepare and distribute ballots for such submission, such ballots to be prepared, printed and distributed in accordance with the provisions of an act entitled, 'An act to provide for the printing and distribution of ballots at public expense,' " etc.

Section 16 of the act referred to, provides as follows: "Whenever a constitutional amendment or other public measure is proposed to be voted upon by the people, the substance of such amendment or other public measure shall be clearly indicated on a separate ballot, and two spaces shall be

left upon the right-hand margin thereof, one for the votes favoring the amendment or public measure, to be designated by the word 'Yes,' and one for votes opposing the amendment or measure, to be designated by the word 'No,' as in the form herein given:

| Proposed amendment to the constitution (or other measure) | YES | X |
|---|---|---|
| (Here print the substance of the amendment or other measure) | No | |

The form of ballot used in the election was as follows:

| PROPOSED AMENDMENT TO GENERAL BANKING LAW. For the amendment of Sections 4, 5, 10 and 11 of the General Banking Law. | |
|---|---|
| Against the amendment of Sections 4, 5, 10 and 11 of the General Banking Law. | |

It is contended that the constitution required at least an accurate statement of the substance of that which was to become the law to be printed on the ballots so that the voter would know what he was voting for or against. The act itself had been published in the volume of laws of the session more than a year before the election was held. The constitution contained no direction as to how the knowledge of the proposed law should be brought to the attention of the voter. This was left to the discretion of the legislature. It was not necessary that the proposed law, or the substance of it, should be printed on the ballot. The legislature might take such other means as seemed reasonable to inform the voters as to the proposed change in the law. We cannot say that the publication of the act, together with the other acts of the legislature, was not sufficient.

It is contended by the appellants that the amendment should have been submitted in accordance with the requirements of section 16 of the Ballot law, which has been quoted. The language of the act providing for the submission to a vote does not mention section 16 of the law. The requirement is, that the officers who are now required by law to print and distribute ballots for use in elections shall prepare and distribute ballots for such submission, and that such ballots shall be prepared, printed and distributed in accordance with the provisions of the Ballot law. The amendment itself provided the form in which the question should be submitted to a vote, and that form was not the form provided by section 16 of the Ballot law. The reference to preparing, printing and distributing of ballots in accordance with the Ballot law could have meant only preparing, printing and distributing ballots in the form previously prescribed by the act itself. The General Assembly not being limited by the constitution in that particular, had the power to provide the manner in which the amendment should be submitted to a vote, and having prescribed the form of ballot which should be used, that form must be followed. *Harvey* v. *County of Cook,* 221 Ill. 76; *Swigart* v. *City of Chicago,* 223 id. 371; *People* v. *Myers,* 256 id. 529.

It is argued that the section providing for the submission to a vote of the people requires that the question shall be for the amendment of sections 4, 5, 10 and 11 of the general Banking law or against the amendment of sections 4, 5, 10 and 11 of the general Banking law, and that only one proposition, and not both, should be printed upon the ballots. This is manifestly an erroneous construction of the section. It was not intended to have one of the alternatives printed on the ballot or the other, in accordance with the discretion of the different county clerks who might prepare the ballot, but that both alternatives should appear upon the ballot for the voter's choice.

It is also insisted that if section 2 of the amendatory act does not require the act to be submitted to a vote, as required by the Ballot law, it is contrary to that clause of section 22 of article 4 of the constitution which prohibits special legislation where a general law can be made applicable; that as this is a special law applicable to this act, alone, a general law should have been made applicable, and that section 16 of the Ballot law is a general law which was applicable to the case. This general provision of the constitution is addressed to the judgment and discretion of the legislature, which are not reviewable by the courts. *Owners of Lands* v. *People,* 113 Ill. 296; *Sanitary District of Chicago* v. *Ray,* 199 id. 63; *People* v. *McBride,* 234 id. 146.

The appellants argue that the Auditor cannot bring a suit against the stockholders to enforce a liability to the creditors of the bank. Section 11 of the act provides: "When it. shall be ascertained, in the course of the administration of the estate of a bank in the hands of a receiver that the assets of the bank are insufficient to discharge the entire liability of such bank to its creditors, and when the amount of such deficiency is determined, the court may, in its discretion, direct the receiver to proceed to enforce the liability of the stockholders to creditors provided in section 6 of this act; and when so directed, such receiver shall have the power, and it shall be his duty, to take such action, by suit or otherwise, as the court may direct, to enforce such liability for the benefit of the creditors," etc. The decree contained the following clause: "Fourth, that such other and further proceedings may be taken herein and such other and further orders made herein by the court from time to time as the court may find necessary or proper for the administration of the assets of said trust and savings bank and the complete winding up of the affairs of said trust and savings bank, including the enforcement of the liabilities, if any, of the stockholders thereof to the creditors thereof, for all of which purposes the court retains jurisdiction of this cause."

No decree was entered against any stockholder enforcing his liability as a stockholder nor was there any finding of such liability. It may be that no such decree will ever be rendered, and if it should, the person against whom it is rendered may then appeal. The question of the right of the Auditor to enforce the stockholders' liability is not involved in this appeal and therefore we cannot consider it.

It is argued that the court erred in finding that the appellant Paul F. Beich was a stockholder on June 12, 1914. He had been the owner of forty shares of stock, but on December 23, 1913, he had sold his stock and indorsed and delivered the certificate therefor to the purchaser and had not since become the owner of any stock. The transfer was not, however, made on the books of the bank and he still appeared on the books and records of the bank as the owner of forty shares of stock. Section 6 of the Banking law provides: "It is hereby made the duty of the president and cashier, within thirty days after organization, to file in the office of the recorder of deeds of the county in which such bank is located, a certified list of all the original stockholders, giving the number of shares of stock held by each, and thereafter a certificate of all transfers of stock, not later than ten days after such transfer." This section provides for a public record of the stockholders of a banking corporation. Section 11 authorizes the suit against the corporation and its stockholders for the dissolution of the corporation. It ought to be construed to afford a practical remedy, if possible. The purchaser of stock who conceals his identity by his failure to have the stock transferred on the books of the corporation knows that his vendor will be recognized and may be dealt with as the real stockholder. So far as the corporation is concerned, he is the real stockholder until his stock is transferred according to law, or at least until the bank is notified of the transfer. As between the vendor and purchaser, and as to others having notice of the fact, a different question may arise, but so far as the bank and

the people are concerned the registered stockholder may be treated as the real owner of the stock, and the real owner will be bound. We do not decide that the finding will be binding to fix a liability as stockholder upon Beich, but that it is sufficient in a case of this kind to make those who appear upon the records of the corporation to be its stockholders, parties to the suit.

The decree is affirmed.   *Decree affirmed.*