(No. 48316.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. BRUCE FRANKLIN AVERY, Appellee.

*Opinion filed August 23, 1977.*

184

DOOLEY, J., specially concurring.

William J. Scott, Attorney General, of Springfield, and Philip G. Reinhard, State's Attorney, of Rockford (James B. Zagel, Jayne A. Carr, and Thomas Connors, Assistant Attorneys General, of Chicago, of counsel), for the People.

Gerald W. LaFayette, of Rockford, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

In the circuit court of Winnebago County, the defendant, Bruce F. Avery, was charged by way of complaint with a violation of section 406(a)(1) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1406(a)(1)), in that, on March 12, 1974, he knowingly and not in good faith dispensed a controlled substance, diethylpropion, to Edward J. Doyle, by issuing a prescription to Doyle. The defendant moved to dismiss

the complaint. The trial court granted the motion, concluding that there was no offense on the basis that any rule issued by the Director of Law Enforcement (Director) to add, delete or reschedule controlled substances had no effect until the purport of such rule was submitted to and adopted by the General Assembly. The trial court further stated that the General Assembly could not delegate such legislative power to the Director.

The Illinois Controlled Substances Act, which became effective August 16, 1971, contains five schedules, each of which enumerates various substances. The State concedes that diethylpropion was not among the substances enumerated in the Act on the date of the defendant's alleged violation, March 12, 1974. Prior to that date, however, the Director had promulgated a rule that added diethylpropion to schedule IV. The rule was to be effective March 1, 1974.

The legislature, under section 201(a) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1201(a)), delegated to the Director the power, with the concurrence and approval of the Dangerous Drugs Advisory Council (Council), to issue a rule the effect of which would be to add to or delete from the schedules of controlled substances, or to reschedule those already controlled and enumerated within the five schedules of the Act. The legislature further stated that, in making the determination regarding the rescheduling of a substance, the Director and Council shall consider the following criteria:

> "(1) the actual or relative potential for abuse;
>
> (2) the scientific evidence of its pharmacological effect, if known;
>
> (3) the state of current scientific knowledge regarding the substance;
>
> (4) the history and current pattern of abuse;
>
> (5) the scope, duration, and significance of abuse;
>
> (6) the risk to the public health;
>
> (7) the potential of the substance to produce

psychological or physiological dependence;

    (8) whether the substance is an immediate precursor of a substance already controlled under this Article;

    (9) the immediate harmful effect in terms of potentially fatal dosage; and

    (10) the long-range effects in terms of permanent health impairment." Ill. Rev. Stat. 1973, ch. 56½, par. 1201(a).

The criteria set forth are almost identical to those of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. sec. 801 *et seq.*), which contains schedules (sec. 812) and authorizes the Attorney General to add substances to, transfer between, or remove them from the schedules (sec. 811). This act of Congress has been held to be a constitutional delegation of legislative power. *United States v. Pastor* (2d Cir. 1977), 557 F.2d 930. Also see *United States v. Piatti* (E.D.N.Y. 1976), 416 F. Supp. 1202.

    In Illinois, as recently stated:

> "It is well settled that notwithstanding the rule that the General Assembly cannot delegate its general legislative power to others, it may authorize others to do things which it might properly do but cannot do as understandingly or as advantageously itself, if the authority thus granted is delimited by intelligible standards." (*Hoogasian v. Regional Transportation Authority* (1974), 58 Ill. 2d 117, 130, and cases cited therein.)

"[T]he necessity for speedy, detailed and expert agency action in the area of drug technology cannot be disputed." (*United States v. Pastor* (2d Cir. 1977), 557 F.2d 930. We find, then, that the legislature properly delegated to the Director the authority to add, remove or reschedule substances, and it has provided the aforequoted intelligible standards to delimit that authority.

    The trial court was of the opinion that any rule issued

became effective and enforceable only after it was adopted into law by the General Assembly. We disagree.

Section 201(b) of the Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1201(b)) provides that no such rule would "have any effect prior to the concurrence of the Dangerous Drugs Advisory Council," and, further, that unless within two years after the rule is issued the legislature adopts the essence of the rule (which the Director is to submit to the General Assembly in the form of proposed legislation) the "rule shall expire and have no further force and effect."

A subsequent paragraph within the same section states that any substance designated, rescheduled or deleted as a controlled substance under Federal law shall, upon notice to the Director, be similarly controlled by him. In such event, certain procedural safeguards must be accomplished before the Director's rule may issue, but the rule, when and if published, "shall be final unless altered by statute." Ill. Rev. Stat. 1973, ch. 56½, par. 1201(d).

Section 213 of the Act requires revised schedules to be republished semiannually for the first two years, and, thereafter, annually. "If the Director fails to republish the Schedules, the last published Schedules shall remain in full force and effect." Ill. Rev. Stat. 1973, ch. 56½, par. 1213.

From the above-quoted language of the Act, we conclude that the legislature clearly intended that any rule issued by the Director in conformance with the statute was to have the immediate effect of law. The language and intent, therefore, stand in refutation of the trial court's conclusion that the Director's rule did not become law until after it had been adopted into law by the legislature.

Section 201(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1201(b)), however, fails to provide due notice to persons affected by a rule. It may be argued that, if the Director's rules are issued under properly delegated authority and are to have the effect of law, no notice should be required inasmuch as no notice is

necessary when the legislature itself enacts a law. True, on legislative enactments, notice—as the term is ordinarily employed—is not required. But notice does in fact occur, for it is constitutionally required that "[a] bill shall be read by title on three different days in each house" (Ill. Const. 1970, art. IV, sec. 8(d)). A person who might be affected must have the opportunity to avoid violating the law, especially, as in the instant case, a penal law. Under section 201(b), no notice is required. A rule issued at noon on any given day could be enforced the same day. The legislature itself, had it not delegated the power, could not accomplish this result.

The legislature recognized this dangerous omission. The amended section 201, effective August 14, 1975 (Ill. Rev. Stat. 1975, ch. 56½, par. 1201), provides that the Dangerous Drugs Commission (replacing the Director and Council) must publish its determination, allow 30 days for objections from a party adversely affected, and conduct a hearing and make findings, before determining whether to issue a rule controlling a substance.

We therefore conclude that section 201 of the Act, as it existed prior to August 14, 1975 (Ill. Rev. Stat. 1973, ch. 56½, par. 1201), is invalid for failure to require due notice prior to effect being given any rule which the Director might issue under the delegated authority of the Act. Because of the severability provision of the Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1602), this holding does not render the Illinois Controlled Substances Act invalid as a whole.

For the reasons stated, the judgment of the circuit court of Winnebago County is affirmed.

*Judgment affirmed.*

MR. JUSTICE DOOLEY, specially concurring:

I concur in the judgment affirming the circuit court's dismissal of the complaint since it did not charge an

offense. But I do not agree with the reasoning by which this court reached that result.

At the time, March 12, 1974, when the defendant allegedly violated the statute in dispensing a known controlled substance, diethylpropion, it is conceded that diethylpropion was not among those substances enumerated in the Act. Prior to that date, however, the Dangerous Drugs Advisory Council had promulgated a rule, effective March 1, 1974, which added diethylpropion.

The controlling statute, section 201(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1201(b)), provides that the Director of the Department of Law Enforcement may issue a rule concerning the substance, but no such rule "shall have any effect prior to the concurrence of the Dangerous Drugs Advisory Council. Each such rule shall then be submitted to the General Assembly, in the form of a proposed law amending this Act, and unless the proposed law is adopted by the General Assembly and enacted into law within 2 years after the Director has issued the rule, such rule shall expire and have no further force and effect." Thus there are four steps spelled out by the statute: (1) the issuance of the rule by the Director; (2) the concurrence of the Dangerous Drugs Advisory Council; (3) the submission to the General Assembly in the form of a proposed law; and (4) action by the General Assembly.

Notwithstanding the clear language of the statute requiring the Director to submit every rule to the General Assembly "in the form of a proposed law amending this Act, and unless the proposed law is adopted by the General Assembly and enacted into law within 2 years after the Director has issued the rule, such rule shall expire," the majority states that upon the issuance of the rule by the Director it becomes a law:

"[W]e conclude that the legislature clearly intended that any rule issued by the Director in

conformance with the statute was to have the immediate effect of law. The language and intent, therefore, stand in refutation of the trial court's conclusion that the Director's rule did not become law until after it had been adopted into law by the legislature." 67 Ill. 2d at 187.

But the plain language of section 201(b) shows that the General Assembly did not intend that the promulgation of the rule be the enactment of a law. It authorized the rule proposed by the Council to be submitted "in the form of a proposed law," and unless the proposal was enacted into law within the two-year period, it was a nullity. We cannot neglect the fundamental rule of statutory construction that the court must read the statute as a whole without presuming that a portion of it is surplusage. In *Hirschfield v. Barrett* (1968), 40 Ill. 2d 224, this court said:

"The presence of surplusage, however, is not to be presumed in statutory or constitutional construction (*Winnebago County v. Industrial Com.*, 34 Ill. 2d 332, 335; *Pinkstaff v. Pennsylvania Railroad Co.*, 31 Ill. 2d 518, 524), and the fundamental rule that each word, clause or sentence must, if possible, be given some reasonable meaning (*People ex rel. Barrett v. Barrett*, 31 Ill. 2d 360; *Doubler v. Doubler*, 412 Ill. 597, 600) is especially apropos to constitutional interpretation." 40 Ill. 2d 224, 230.

There is no language which supports the majority's position that a rule has the immediate effect of law. Even more important are the constitutional questions which could arise from such an interpretation. A rule could be enacted at 9 a.m., and at 1 p.m. the same day the prosecution could commence if the enactment of the rule had the force and effect of a law.

The majority's interpretation is significant for another

reason. Under its terms an administrative agency could determine offenses punishable by imprisonment. The dispensing of a controlled substance is either a Class 4 felony or a Class A misdemeanor, each of which is an offense punishable by imprisonment. (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—8—1(a)(5), 1005—8—3(a)(1).) Under the terms of the majority opinion the Director has the power to determine at will what constitutes a crime punishable by imprisonment. This would seem offensive to the Criminal Code of 1961, which provides that "[n]o conduct constitutes an offense unless it is described as an offense in this Code or in another statute of this State" (Ill. Rev. Stat. 1975, ch. 38, par. 1—3), while section 2—12 of the Criminal Code of 1961 defines an "offense" as "a violation of any penal statute of this State" (Ill. Rev. Stat. 1975, ch. 38, par. 2—12). In no other instance do our laws delegate to an agency the power to fix a crime punishable by imprisonment. Yet under the terms of the majority opinion such power would be given the Director and the Dangerous Drugs Advisory Council.

The majority holds that a rule promulgated by the Council becomes a law upon its issuance by the Director. However, it then holds this statute, which according to its interpretation gives the Council law-making power, to be invalid for want of notice. Here is what is said:

> "True, on legislative enactments, notice—as the term is ordinarily employed—is not required. But notice does in fact occur, for it is constitutionally required that '[a] bill shall be read by title on three different days in each house' (Ill. Const. 1970, art. IV, sec. 8(d)). A person who might be affected must have the opportunity to avoid violating the law, especially, as in the instant case, a penal law. Under section 201(b), no notice is required." 67 Ill. 2d at 188.

No notice to potential violators is required for the enactment of a bill into law. The Constitution provides that only the title, not the contents, of the bill be read:

"A bill shall be read by title on three different days in each house." (Ill. Const. 1970, art. IV, sec. 8(d).)

Obviously, the list of controlled substances does not appear in the title, and a reading of the title would not apprise one of the drugs prohibited by the bill.

More than that, however, no reading whatsoever is required when a bill is amended, so long as the amendment is germane to the general subject matter of the bill.

"However, amendments germane to the subject matter may be made without the proposed act, as amended, being read three times in each House. (*Commissioners of Sny Island Levee Drainage Dist. v. Shaw,* 252 Ill. 142; *People ex rel. Gibbons v. Clark,* 296 Ill. 46; *Stevenson v. Montgomery,* 263 Ill. 93.) In order to come within the rule that an amendment need not be read three times in each House, it must be germane to the general subject of the bill as originally introduced. *People ex rel. Brady v. LaSalle Street Trust and Savings Bank,* 269 Ill. 518." *Giebelhausen v. Daley* (1950), 407 Ill. 25, 46-47.

"Germane" has a very broad definition. It means "akin" or "closely allied." *Giebelhausen v. Daley* (1950), 407 Ill. 25, 47; *Dolese v. Pierce* (1888), 124 Ill. 140.

But there is more. The concept of the unconstitutionality of a law for failure to give notice of its enactment is unique. In fact, it is found for the first time in this opinion.

The predicate of unconstitutionality appears to be that the 1975 act (Ill. Rev. Stat. 1975, ch. 56½, par. 1100 *et seq.*), together with section 5 of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1975, ch. 127, par.

1005), would now require notice. But a 1975 act does not determine the validity of a 1971 statute. Neither the 1975 amendment to the Illinois Controlled Substances Act nor the Illinois Administrative Procedure Act was in effect at the time of the commission of the offense for which defendant was convicted. They cannot be the criteria of the constitutionality of the statute before the court.

To arrive at its result, the majority has had to declare this statute "invalid." This means unconstitutional. But we are not told with what part of the Constitution the statute conflicts, nor in what respect it violates constitutional guarantees. All subjects within the scope of civil government may be acted upon by the General Assembly unless there is a constitutional inhibition against such conduct. As this court stated in *Locust Grove Cemetery Association v. Rose* (1959), 16 Ill. 2d 132:

> "Every subject within the scope of civil government which is not within some constitutional inhibition may be acted upon by the General Assembly. (*Sutter v. People's Gas Light and Coke Co.* 284 Ill. 634.) Thus the question is narrowed to an inquiry whether or not the statute contravenes any constitutional provision." (16 Ill. 2d 132, 138.)

So also all presumptions are in favor of the constitutionality of a law and all reasonable doubt must be resolved in its favor. *North Shore Post No. 21 v. Korzen* (1967), 38 Ill. 2d 231, 233; *Locust Grove Cemetery Association v. Rose* (1959), 16 Ill. 2d 132, 138; *Thillens, Inc. v. Hodge* (1954), 2 Ill. 2d 45, 57; *Gadlin v. Auditor of Public Accounts* (1953), 414 Ill. 89, 95; *Klein v. Department of Registration & Education* (1952), 412 Ill. 75, 85; *People v. Dale* (1950), 406 Ill. 238, 244.

The majority refers to decisions construing the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. sec. 801 *et seq.* (1970)). That act

of Congress is not before us. It is not relevant to this case. Section 201 of the Act (21 U.S.C. sec. 811 (1970)) authorizes the Attorney General of the United States to add substances to the list of controlled substances, but the Federal act contains no provisions comparable to section 201(b) of the Illinois act. The Federal statute offers nothing in determining the meaning of the Illinois statute.

The provision in section 201(d) (Ill. Rev. Stat. 1973, ch. 56½, par. 1201(d)) that a rule, once established, "shall be final unless altered by statute" does not aid the majority. Section 201(d) relates only to situations where a substance has been controlled by the Federal government under Federal law. It contains no provision for submission to the General Assembly, and is not involved in the present problem.

Rather than follow the tortuous path of the majority with its potentially far-reaching effects, and its declaration of the "invalidity" of the statute giving the force of law to a rule of an administrative body, it seems to me that the proper solution to this problem is the simple one—to follow the clear language of the statute. This means holding that under the statute the particular conduct with which defendant is charged had not yet become a violation of an effective law. Simplification never creates problems.