## CHAPLIN v. FIRST BANK OF HITCHCOCK et al.

No. 8817—Opinion Filed May 20, 1919.

(181 Pac. 497.)

(Syllabus.)

**1. Process—Service by Publication—Statute.**

Under section 4722, Rev. Laws 1910, providing for service by publication, it is not necessary to allege in terms that the action is one of those numerated in the section where the affidavit to obtain service by publication mentions sufficient grounds.

**2. Shares of Stock of Incorporated Bank —Transfer—Validity.**

The shares of stock of an incorporated bank are deemed personal property to be transferred on the books of the bank in such manner as the by-laws therefor may direct, and no transfer of stock shall be valid against the bank so long as the registered holder thereof shall be liable to the bank for any indebtedness, and the stock represented by the certificates is deemed to be held by the bank within the state whose creature it is, whenever it is sought by suit to determine the rights of parties therein.

**3. Process — Publication — Defect — Affidavit—Amendment.**

Where the jurisdictional facts necessary to warrant service by publication were in existence at the commencement of the action, and the affidavit for publication is defective only that it states inferentially, or in any other way, any matter required by statute to be alleged therein, it is amendable

**4. Judgment—Attack After Adjournment— Defect in Affidavit for Publication.**

A judgment regular upon its face rendered by default, and upon publication service in the action, where such service is authorized by statute and approved by the court, is not subject after the adjournment of the term to attack by motion supported by affidavit upon the ground of the falsity of the affidavit for publication.

Error from District Court, Blaine County; Thos. A. Edwards, Judge.

Action by the First Bank of Hitchcock against M. S. Chaplin and Frank Cronkhite. Judgment for plaintiff against defendant Cronkhite by default, and against defendant Chaplin, motion by defendant Chaplin to set aside judgment overruled, and he brings error. Affirmed.

William O. Woolman, for plaintiff in error.

Seymour Foose and R. C. Brown, for defendants in error.

PITCHFORD, J. On the 22d day of April, 1915, the First Bank of Hitchcock commenced in the district court of Blaine county an action against Frank Cronkhite and M. S. Chaplin. The relief sought will more fully appear from the affidavit herein. Personal service was had upon Frank Cronkhite, and plaintiff sought to have service on M. S. Chaplin by publication. The material portion of the affidavit for service by publication, after naming the court, county, state and parties, is as follows:

"That the said plaintiff, the First Bank of Hitchcock, has filed its petition and commenced its action in said court against the defendants, Frank Cronkhite and M. S. Chaplin, and in said action and petition sues the defendants, Frank Cronkhite and M. S. Chaplin, to recover judgment on a promissory note given by the defendant Frank Cronkhite to the plaintiff on November 21, 1914, for the sum of $1,935.90 with interest at 10 per cent. per annum after maturity, and maturing January 20, 1915, and the additional sum of $250 as attorney's fees and for the costs of the action, and, to secure said indebtedness, claims a lien on 23⅓ shares of the capital stock of said plaintiff bank issued to and owned by the defendant Frank Cronkhite, together with the dividends, interest, and profits which may accrue thereon, and alleges that the defendant M. S. Chaplin claims some lien upon or interest in said shares of stock adverse to the plaintiff, but that whatever lien upon or interest in said shares of stock the said M. S. Chaplin may claim or have, if any, the same is inferior, junior, and subject to the lien and interest of the plaintiff as claimed and pleaded in its petition, and praying for judgment on said note against the defendant Frank Cronkhite, and for the foreclosure of its lien on said shares of stock, and that the same be sold according to the law and the proceeds of the sale applied to the discharge of said indebtedness and judgment, and that the defendant M. S. Chaplin be required to go into court and plead any claim of lien upon or interest in said shares of stock that he may have, and that judgment be rendered against him barring, divesting, and excluding him of all right, or interest in or lien upon said shares of stock, and for judgment against both of the defendants for all the costs of the action, and for all relief, orders and judgments to which the plaintiff may be entitled under the pleadings and the evidence."

On the 1st day of June, 1915, the defendant M. S. Chaplin, by way of special appearance and limiting his appearance to that purpose only, objected to the jurisdiction of the court for the following reasons, to wit:

First. That the action is not one in which service by publication can be had as against this defendant under any provisions of the laws of the state of Oklahoma.

Second. That the affidavit filed herein for service by publication is defective and insufficient, in this, that the same does not show that the personal property claimed to be involved in this action was in the state of Oklahoma at the time of the commencement of this action.

Third. That said personal property is not sought to be taken or affected by any of the provisional remedies.

After filing the foregoing objections and before the judgment of the court thereon, the plaintiff was granted leave over the objection of the defendant to amend the affidavit by inserting the following matter immediately after the end of the first paragraph, "located in the said Blaine county, state of Oklahoma, and organized under the laws of the state of Oklahoma," and the following words and matter immediately after the words "Frank Cronkhite" in the fourth from the last line on first page of said affidavit, to wit, "in said Blaine county." The court then overruled the special appearance, and the defendant M. S. Chaplin excepted. On the same day the defendant M. S. Chaplin filed his second special appearance, and moved to quash on the grounds that the court was without jurisdiction to grant the right to amend, which was by the court overruled and exceptions saved. Defendant Chaplin refused to plead further.

On the 26th day of January, 1916, the plaintiff obtained judgment by default against Frank Cronkhite in the sum of $2,132.75 and $25 attorney's fee, also a decree that the bank have a first lien upon said stock, and that the said M. S. Chaplin had no right or interest or lien in or against or upon said shares of stock, and also barring the defendant M. S. Chaplin from any right, title, and interest in said stock, and ordering the sale of said shares of stock to satisfy said judgment. We quote from the journal entry of the judgment the following:

"And now the court finds that the defendant Frank Cronkhite has been duly and personally served with summons in said action in Blaine county, and due return of such summons duly made and filed, and the time

allowed said defendant by law and by the terms of said summons in which to answer has long since expired, and the defendant Frank Cronkhite has not answered or otherwise pleaded herein, and is hereby adjudged to be in default for want of answer or other pleading, and for want of appearance. The court further finds that a summons has been duly served on the defendant M. S. Chaplin, by publication, and that publication thereof has been duly made in accordance with the requirements of law and on a good and sufficient affidavit therefor, and proof of such publication of summons has been duly made by affidavit and filed herein, and is hereby approved, and that the time allowed the defendant M. S. Chaplin by law and by the terms of said summons to answer in said cause has long since expired, and the said defendant M. S. Chaplin has not answered or otherwise pleaded, and is in default for want of answer or other plea, and for want of appearance, and is so adjudged to be in default, and that each of said defendants by such default on his part is hereby held to have confessed the allegations of plaintiff's complaint."

On May 27, 1916, the defendant M. S. Chaplin filed a motion to set aside the judgment and the sale thereunder for the following reasons: That the court in rendering the judgment was without jurisdiction of the person of the defendant Chaplin and without jurisdiction over the property involved; that the affidavit filed in said cause for the purpose of obtaining service by publication is and was defective and insufficient, in this, that the same did not show that at the time of the filing of said affidavit originally on April 22 1915, the shares of stock involved in said action were within the jurisdiction of the district court of Blaine county, or within the state of Oklahoma; that the original affidavit for service by publication was never amended in any particular except as is shown on the face thereof by interlineations with pen and ink, which affidavit was never reverified as amended, and was not authenticated by any officer authorized to administer oaths as being amended or reverified as of the date of September 25, 1915; nor does said amended affidavit purport to show on its face that on the 22d day of April, 1915, the said bank stock certificates were within the state of Oklahoma and within the jurisdiction of this court, and further, that there is no authority in law for the amendment of an affidavit for service by publication in this cause unless such amendment relates to a fact existing as a fact at the time of the filing of the original affidavit, which fact must appear affirmatively by the amendment as made; and, further, that said certificates of bank stock were at that time, to wit, on the 22d day of April, 1915, and still are,

within the state of Iowa, and were not within in the state of Oklahoma at that time.

On the 19th day of September, 1916, the foregoing motion was overruled, whereupon the said M. S. Chaplin appeals. The said Frank Cronkhite, refusing to join in the appeal, is made one of the defendants in error. Plaintiff in error relies upon two specifications of error:

First. The court erred in permitting the plaintiff to amend its affidavit for service by publication.

Second. The purported amendment was void and conferred no jurisdiction to obtain service by publication.

It is a well-settled rule in this state that, if an affidavit seeking service on a nonresident defendant by publication fails in any jurisdictional particular, and judgment is entered in the case, the same would be void and subject to collateral attack. The fact that the defendant M. S. Chaplin entered a special appearance in court and sought to have the service quashed did not result in a general appearance. Unless the court had jurisdiction of the subject matter—that is, the shares of stock—it could acquire none of the defendant by the publication notice. Before the service by publication could be of any effect, the court had to have jurisdiction of the subject-matter, and the reason for calling the court's attention to the subject-matter was for the purpose of showing that the court was without jurisdiction, unless the property sought to be reached by the proceedings was within the state, and this fact must appear from the affidavit either positively or inferentially.

Under section 4722, Rev. Laws 1910, service may be made by publication in actions which relate to, or the subject of which is, real or personal property in this state, which any defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or particularly in excluding him from any interest therein, such defendant is a nonresident of the state.

The extent of the amendment permitted by the court was that the First Bank of Hitchcock was located in Blaine county, Okla., and organized under the laws of said state, and that the shares of the capital stock involved were in Blaine county. The intention evidently of the affiant was to show that the condition existing at the time of the amendment existed at the time of the original affidavit; that is, the First Bank of Hitchcock was located in Blaine county, Okla., and organized under the laws of the state of Oklahoma; that on that date Frank

Cronkhite resided in Blaine county; that the shares of the capital stock were in Blaine county. This amendment was made before the court passed upon the motion filed by the defendant M. S. Chaplin to quash the service. After allowing the amendment, the court overruled the motion to quash. The defendant then filed a second motion, appearing especially for that purpose, and objected to the jurisdiction of the court over his person for the reason that the action was not one in which service by publication could lawfully be had, and that the original affidavit for service by publication was fatally defective and inefficient; that the same failed to show that the personal property claimed to be involved was in the state of Oklahoma; and that the attempted amendment of the affidavit for service was and is null and void and conferred no jurisdiction over this defendant.

Section 4725, Rev. Laws 1910, provides that the publication for service shall state the court in which the petition is filed, the names of the parties, and must notify the defendant thus to be served that he has been sued, and must answer the petition filed by the plaintiff on or before the time stated, which shall not be less than 41 days from the date of the first publication, or the petition will be taken as true and judgment, the nature of which shall be stated, will be rendered accordingly.

The objection in the motion to quash on the part of the defendant is that the affidavit failed to state that the shares were in the state of Oklahoma. We are of the opinion that the judgment rendered upon this affidavit and publication would have been good as against a collateral attack. In 10 Cyc. 588, it is said:

"A share certificate is merely the paper representative of an incorporeal right, and stands on a footing similar to that of other muniments of title. It is not in itself property, but is merely a symbol or paper evidence of property; hence the proprietary right may exist without a certificate. Certificates of shares of corporate stock are not letters of credits, or in the nature of letters of credits. Certificates of shares of capital stock are not negotiable instruments either in form or character, although they are often said to be quasi negotiable. The general consequence of this doctrine is that whoever takes them takes them subject to the equities and burdens which attend them, as in the case of the purchase of any other nonnegotiable paper, and that although ignorant of such equities and burdens, his ignorance does not relieve the paper thereof or enable him to hold it discharged therefrom. They are nonnegotiable in the sense that a complete transfer of

title good not only between the parties, but also against the corporation itself, can only be made with the concurrence of the act of the corporation in pursuance of its charter, governing statutes or operative by-laws."

The same rules as announced by Cyc. are announced by Clark on Corporations, p. 258, second edition of said work. The certificates of shares being the symbol of property and evidence of an interest in the property, it follows that the property is located wherever the residence of the corporation may be, and litigation affecting the title of the stock should be in the jurisdiction where the corporation is created or resides, although the owner thereof might be a nonresident of the state, and that for the purposes of litigation affecting the title of the stock constructive service was sufficient.

In 7 Cyc. 496, we find the following:

"It is frequently provided that no transfer or assignment of stock shall be valid with respect to the bank unless or until there is a formal transfer of the stock on the books of the corporation; and where this is the case, it is the right of the bank to treat a stockholder as the true owner of stock and to deal with him accordingly until it receives notice that he has assigned such stock to another." People's Bank v. Macon Exchange Bank, 116 Ga. 820, 43 S. E. 296, 94 Am. St. Rep. 144.

In People v. La Salle St. Trust, etc., Bank, 269 Ill. 518, 110 N. E. 38, it was held that, where the stockholder had sold his stock and indorsed and delivered the certificate therefor to the purchaser, the transfer not being made on the books of the banks, and the vendor still appearing on the books and records of the banks as the owner of 40 shares of the stock, the purchaser of the stock who concealed his identity by his failure to have the stock transferred on the books of the corporation was held to know that his vendor would be recognized and could be dealt with as the real stockholder, in that, so far as the corporation was concerned, the original owner was the real stockholder, and until his stock was transferred according to law, or at least until the bank was notified of the transfer, the registered stockholder may be treated as the real owner of the stock.

Section 290, Rev. Laws 1910, provides:

"The president and cashier of every incorporated bank shall cause to be kept at all times a correct list of the names and residences of all the shareholders in the bank and the number of shares held by each, in the office where its business is transacted. Such list shall be subject to the inspection of all the shareholders and creditors of the bank, and the officers au-

thorized to assess taxes under the state authority. * * *"

Section 294, Rev. Laws 1910, provides:.

"The shares of stock of an incorporated bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws therefore may direct, but no transfer of stock shall be valid against a bank or any creditor thereof so long as the registered holder thereof shall be liable as a principal debtor, surety or otherwise to the bank for any debt, nor in such cases shall any dividend, interest or profits be paid on such stock so long as such liabilities continue, but all such dividends, interest or profits shall be retained by the bank and applied to the discharge of such liabilities, and no stock shall be transferred on the books of any bank where the registered holder thereof is in debt to the bank for any matured and unpaid obligations."

Section 6738, Rev. Laws 1910, is as follows:

"If there is no law to the contrary in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the law of his domicile."

In Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647, the court said:

"The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit of the true owner as the habitation or domicile of the company is and must be in the state that created it. The property represented by its certificates of stock may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner."

In passing upon the errors relied on, we are confronted with this proposition: If the affidavit for the warning order failed in any jurisdictional particular, was the court authorized in allowing the same to be amended? In the case of City National Bank v. Sparks, 50 Okla. 648, 151 Pac. 225, the court said:

"Where the jurisdictional facts necessary to warrant service by publication were in existence at the commencement of the action, and the affidavit for publication is defective only in that it states inferentially, or in any other way any matter required by statute to be alleged therein, it is amendable, even after judgment; but where there is a total want of averment in the affidavit of some material fact required by statute, * * * the service is void, and the defect cannot be cured by amendment."

The first special appearance of the defendant, seeking to have the service quashed, did not result in a general appearance. Before the defendant could be served by publication, it was necessary that the property to be affected be in the state; at least, it was necessary that the affidavit allege that fact either positively or inferentially. As we have seen, where there is a total want of averment in the affidavit of some material fact required by statute, the service is void, and the defect cannot be cured by amendment. Was there sufficient in the affidavit as originally filed to inform the nonresident defendant of the purport and scope of the judgment sought by the plaintiff? The affidavit and the warning order disclosed that the action had been brought in the district court of Blaine County, state of Oklahoma, gave the names of the plaintiff and defendants, and, further, that the judgment sought was to bar, divest, and exclude the defendant from any right, title, or interest in or lien upon 23⅓ shares of the capital stock of the said First Bank of Hitchcock issued to and owned by the defendant Frank Cronkhite, and, further, that the bank claimed a first lien on said shares of capital stock to secure the indebtedness of the defendant Frank Cronkhite to the said plaintiff. Any one seeing this affidavit and warning order would naturally infer that the plaintiff bank was located in Hitchcock, that Hitchcock was in Blaine county, and that Blaine county was in Oklahoma, and that the purpose of the action was to declare and foreclose a lien upon the 23⅓ shares of stock owned by the defendant Frank Cronkhite.

In the case of Osie Raymond v. Nix, Halsell & Co., 5 Okla. 656, 49 Pac. 1110, it was held that an affidavit for publication which stated defectively, but inferentially, the things required by the statute, was voidable, but not void, and the defects could be cured by amendment, and that, when the defendant enters a general appearance in the case without first attacking the service by publication on the ground of the defect in the affidavit for publication, he waives such defect. In the case at bar the amendment was made before the court passed upon the motion filed by the defendant. After allowing the amendment, the court overruled the motion to quash. The defendant then filed a second motion, appearing especially for that purpose and that alone, as stated in the motion, and objected to the jurisdiction of the court over his person for the reason that the action was not one in which service by publication could lawfully be had, and that, the original affidavit for service by publication being fatally defective and inefficient, the attempted amendment was and is null and void and conferred no jurisdiction over

this defendant. The affidavit as amended fulfilled every requirement of the statute. It was therefore made to appear that the bank was in Blaine county, that the shares of stock sought to be affected were in the state, and that the defendant Frank Cronkhite resided in the county. When the defendant filed his second motion to quash, he attacked the authority of the court to allow the amendment. Did he thereby enter a general appearance?

The case of Rogers v. McCord-Collins Merc. Co., 19 Okla. 115, 91 Pac. 864, was very much like the case at bar. There the defendant appeared especially and moved to quash and set aside the summons and the service thereof for the reason that the defendant was not at the time of service a resident of the county or territory. Evidence was introduced upon this motion and overruled by the court, and judgment was thereupon rendered as upon default. Thereafter the defendant filed a motion praying that the judgment rendered be set aside on the ground that the defendant was a nonresident when service was made and that the court had no jurisdiction of the person of the defendant. Evidence was introduced upon this motion, and heard by the court, and after consideration the court overruled the same. There the court held:

"This same question, having been presented to the court upon the motion to quash service became res adjudicata, and the court would have been justified in overruling the motion upon that ground, if none other. An order overruling a motion to quash summons and service is as conclusive on appeal from a subsequent order involving the same question, and becomes res adjudicata to the same extent, as if the order had been made upon the final judgment. Generally when an order is made denying a motion to quash service of summons, and a final judgment is rendered, an appeal will lie from such judgment, and the ruling arising upon the motion to quash service may be assigned as ground for reversal, and, if no appeal is taken, the matter arising on the motion to quash service becomes res adjudicata and a bar to the right of the defendant to raise the same question upon a subsequent motion involving the same subject-matter. While there are exceptions to the letter of this rule, yet, whenever the exceptions have been recognized, they have been based upon what seems necessary for the full protection of the rights of the parties. 'Orders made on motions affecting the substantial rights of parties from which an appeal lies, if the matter in question has been fully tried are as conclusive upon the issue necessarily decided, as are final judgments.' Halverson v. Orinoco [89 Minn. 470] 95 N. W. 320."

In City National Bank v. Sparks, supra, the court said:

"Did the defendant, by a general appearance or otherwise, waive the defects in the service and submit himself to the jurisdiction of the court before or after judgment? Generally speaking, any plea or proceeding raising questions, nonjurisdictional, and involving the merits, constitutes a general appearance, and waives all questions as to the regularity of the service, whether made before or after judgment. Any plea or proceeding which raises jurisdictional questions only is a special appearance, and the mere fact of filing the same does not give the court jurisdiction over the person of the defendant. Were this not true, the defendant's mouth would be forever closed to question the jurisdiction of the court over his person, but a party who denies the jurisdiction of the court over his person must first present that single question. He may not mingle with his plea, other pleas which concede jurisdiction, and thereafter insist that there was error in overruling his plea to the jurisdiction. Where the pleader urges jurisdictional and nonjurisdictional grounds as a basis of relief, he enters a general appearance; and this is true when done at any stage of the proceedings."

In Ziska v. Avey et al., 36 Okla. 405, 122 Pac. 722, Sharp, C., in delivering the opinion of the court, said:

"We are aware that a number of courts of high respectability do not follow the rule laid down by this court and adopted and consistently followed by the Supreme Court of Kansas in the cases cited, and we believe that the rule should be confined rather than extended. However, the difficulty is one that may easily be avoided by the exercise of care in avoiding setting up other than jurisdictional grounds when relief is invoked. But what has plaintiff in error done in this case? Both in the first and second motions he attacks the sufficiency of the petition for various reasons. Under the authority cited, it will therefore be unnecessary for us to consider either the sufficiency of the affidavit for publication or the notice of publication, as the plaintiff in error by his motions to vacate entered a general appearance in said action, and thereby waived irregularities that may have prior thereto existed, even though such proceedings were up to the time of said entry or appearance void. In other words, by his motions plaintiff invoked nonjurisdictional as well as jurisdictional relief. Had the plaintiff in error confined himself alone to attacking the jurisdiction of the court by reason of the alleged void service of publication, then it would be necessary to consider and determine the sufficiency thereof, but, having invoked the jurisdiction of the court to pass upon and determine the sufficiency of the petition to state a cause of action, he will

be considered to have waived any rights which he may otherwise have had by reason of the service by publication."

In the case of Barnett et al. v. Holyoke Mutual Fire Insurance Co., 78 Kan. 630, 97 Pac. 962, a motion was filed to vacate and set aside the judgment, for the following reasons:

First. Failure to serve summons on the defendants.

Second. That the court had no jurisdiction to render and enter judgment because the plaintiff's petition failed to state a cause of action.

The motion was overruled and an appeal prosecuted. The court, in passing upon the question, said:

"In the view we have taken, however, the law insisted upon is unavailing in this case. Whatever rights the defendants may have had to vacate and set aside the judgment and decree under the first ground of the motion have been waived by the second ground thereof, as it amounts to no more than a general demurrer, which does not raise a jurisdictional question. It has long been held by this court that an attack upon a judgment by motion containing both jurisdictional and nonjurisdictional grounds constitutes a general appearance, the same as if an appearance had been made at the trial. * * * This rule of law may appear to be harsh in some instances, but in a case like this it seems to be both just and salutary."

In Thompson v. Pfeiffer, as Ex'r, etc., 66 Kan. 368, 71 Pac. 828, the defendant made what he called a special appearance and asked for a dismissal of the action for the following reasons:

First. Because the court had no jurisdiction to hear and determine the same.

Second. Because the same was an action in personam, being an action to enforce a stockholder's double liability, and the same could not be determined in an action in rem.

Third. Because the judgment on which said action was based had become dormant.

There the court held:

"The motion to dismiss, although designated as a special appearance, was, in fact, a challenge to the sufficiency of the averments of the petition. The first ground of the motion, it is true, was jurisdictional, but the second and third grounds invoked the judgment of the court on the merits of the cause of action set up by the plaintiff. Where a defendant, purporting to limit his appearance, actually invites an inquiry as to the sufficiency of a pleading, or upon a matter involving the merits of the controversy, he submits himself to the jurisdiction of the court and waives defects in the process or in the means of bringing him into court. The defendant's motion converted the so-called special appearance into a general one, and the court was therefore warranted in proceeding as though the original service had been complete and regular. Burdette v. Corgan, 26 Kan. 102; Life Ass'n v. Lemke, 40 Kan. 142, 19 Pac. 337; Frazier v. Douglass, 57 Kan. 809, 48 Pac. 36; Gorham v. Tanquerry, 58 Kan. 233, 48 Pac. 916. Later the plaintiff contested the sufficiency of the affidavit for attachment, and in that way raised a question which was not jurisdictional."

In Lausten v. Union National Bank of Bartlesville, decided May 21, 1918, 70 Okla. 173, 173 Pac. 823, the court said:

"Where it is stated in an affidavit to obtain service by publication that a defendant is a nonresident of the state, and that the plaintiff cannot with due diligence make service upon him within the state, it is not void or voidable because it is not alleged in terms that the action is one of those enumerated in section 4722, Rev. Laws 1910, in which service by publication is authorized, provided the description of the cause of action in the affidavit is sufficient to show that it is a case where such service is authorized."

And further:

"A judgment regular upon its face rendered by default and upon publication service in an action where such service is authorized by statute after the adjournment of the term is not subject to attack by motion, supported by affidavit, upon the ground of the falsity of the affidavit for publication."

It was further held that the question of whether the facts stated in the affidavit are true or not is immaterial until challenged in some recognized legal proceeding for the vacation of valid judgments.

It is insisted in the motion to set aside the judgment that the amendment to the affidavit in that property was in Blaine county was not true, and the plaintiff by this motion is seeking to controvert this fact. As we have before stated, the judgment was regular upon its face. The court, before entering judgment, found that the defendant Frank Cronkhite had been duly and personally served with a summons in Blaine county, and, further, that summons had been duly served on the defendant M. S. Chaplin by publication; that publication thereof had been duly made in accordance with the requirements of law, and on a good and sufficient affidavit therefor, and proof of such publication of summons was duly made by affidavit and was duly approved by the court.

Primarily the jurisdiction of the court did not depend upon the situs of the bank's certificates of stock, but upon the evidence thereof furnished by the affidavit, and as to whether the facts stated in the affidavit were true or not was immaterial until challenged in some recognized legal proceeding for the vacation of valid judgments. The affidavit, independent of the amendment, as we have seen, contained all the averments necessary to give the court jurisdiction. The judgment appears to be regular upon its face. If, as a matter of fact, the certificates of stock were not in the state, and the amendment to the affidavit to the effect that they were in the state was untrue, this did not appear upon the face of the affidavit, the warning order, or judgment, and could only be made to appear by extrinsic evidence. The judgment, being regular on its face, could not be attacked collaterally, but could only be set aside and vacated by the methods provided by law. Holding that the judgment was not void, but, at most, voidable, then in order to have the same vacated and set aside, it would be necessary to proceed under section 4728, Rev. Laws 1910, which is as follows:

"A party against whom a judgment or order has been rendered, without other service than by publication in a newspaper, may, at any time within three years after the date of the judgment or order, have the same opened, and be let in to defend. Before the judgment or order shall be opened the applicant shall give notice to the adverse party of his intention to make such an application, and shall file a full answer to the petition, pay all costs, if the court require them to be paid, and make it appear to the satisfaction of the court, by affidavit or other evidence, that during the pendency of the action he had no actual notice thereof in time to appear in court and make his defense. * * *"

As a matter of fact, this affidavit could not be made in the instant case, for, when the defendant filed his second motion to quash, he invoked the jurisdiction of the court to pass upon the right to allow the amendment to the affidavit, and as this amendment could not be made unless it referred to facts in existence at the time of making the original affidavit, the court was necessarily called upon to pass upon that identical question, or at least, we are to presume, until the contrary is shown, that in allowing the amendment the court would not have permitted the same unless it had first ascertained that the facts alleged in the amendment were in existence at the time the affidavit was originally made.

We therefore conclude that the judgment of the lower court should be affirmed; and it is so ordered.

OWEN, C. J., and McNEILL, SHARP, and HIGGINS, JJ., concur.